IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| CHARLES "CHAD" CAIN, III | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | CIVIL ACTION: 4:20-cv-00442-O |
| | § | |
| ALEDO INDEPENDENT SCHOOL DISTRICT, | § | |
| FRED COLLIE and SUSAN BOHN, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S THIRD AMENDED COMPLAINT

Charles "Chad" Cain, III files his Third Amended Complaint complaining of Aledo Independent School District, Fred Collie and Susan Bohn and he shows:

### Parties and Service

1.      Plaintiff, Charles "Chad" Cain, III, is an individual residing in Parker County, Texas.

2.      Defendant, Aledo Independent School District ("Aledo ISD") is a public school district organized under the laws of the state of Texas, which has appeared and has answered.

3.      Defendant, Fred Collie, has appeared in this action and has answered.

4.      Defendant, Susan Bohn, has appeared in this action and has answered.

### Venue and Jurisdiction

5.      The Court has jurisdiction under 28 U.S.C. § 1331, because at least one of the Plaintiff's claims involves a question of federal law under 42 U.S.C. § 1983 *et seq.*

6.      The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the Plaintiff's state law claims, including his claims for injunctive relief, declaratory relief and mandamus relief.

**PLAINTIFF'S THIRD AMENDED COMPLAINT – Page 1**

CAINFEDERALAMENDEDCOMPLAINT3.wpd

7.      Venue is proper in this district because the Plaintiff's claims arose in Parker County, Texas and in Tarrant County, Texas.

## Waiver of and/or Lack of Immunities

8.      To the extent Defendants claim sovereign immunity, government immunity, official immunity, qualified immunity, educator immunity and/or Eleventh Amendment immunity, such claimed immunities are inapplicable or are waived, as explained in detail below, while any claim to Eleventh Amendment immunity by Defendants is waived by removal of this case to federal court.

9.      Defendants are not immune from suit, nor from liability, as their actions and omissions denied and damaged Plaintiff's property rights and liberty interests without due course of law and without due process.

10.      Plaintiff's property rights and liberty interests have been and will continue to be damaged by Defendants' failure to obey Texas law.

11.      The Texas Constitution, Art. I, § 3, states "All free men, when they form a social compact, have equal rights, and no man, or set of men, is entitled to exclusive separate public emoluments, or privileges, but in consideration of public services."

12.      Plaintiff is entitled to equal protection under law by the FOURTEENTH AMENDMENT to the United States Constitution.

13.      The Texas Constitution, Art. I, § 19, states "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land".

14.      Plaintiff is entitled to due process under law by the FIFTH AMENDMENT and by the FOURTEENTH AMENDMENT to the United States Constitution.

**PLAINTIFF'S THIRD AMENDED COMPLAINT – Page 2**

CAINFEDERALAMENDEDCOMPLAINT3.wpd

15.     Plaintiff's claims in equity, for injunctive relief, for declaratory relief and for mandamus relief are allowed by Texas Constitution Art. I, § 29 and by 42 U.S.C. § 1983.

16.     Defendants have no sovereign immunity, no government immunity, no official immunity, no qualified immunity, no statutory immunity and no educator immunity because the illegal trespass warning was issued to Plaintiff in violation of Texas law.

17.     Defendant Collie and Defendant Bohn (the individual Defendants") have no immunity of any kind for their illegal actions and/or omissions, including issuing a criminal trespass warning to Plaintiff and refusing to rescind that warning, as these illegal actions by Defendants were undertaken as employees of Defendant Aledo ISD, allegedly to benefit Defendant Aledo ISD, but which actions and omissions were clearly illegal and violated these individual Defendants' duties to follow the law.

18.     The individual Defendants' illegal actions and omissions were not in the course and scope of employment with Defendant Aledo ISD, because the scope of these Defendants' employment does not include authority to commit illegal actions, and Plaintiff therefore contends the individual Defendants' actions and omissions were *ultra vires* actions and omissions.

19.     Plaintiff shows he  properly alleged Defendants' illegal conduct and he is not limited in making an *ultra vires* claim only by alleging the individual Defendants violated a ministerial duty, contrary to Defendants' claims, because Defendants acted "without legal authority" in issuing the criminal trespass warning to Plaintiff.[1]

20.     Defendant Aledo ISD has no immunity because the illegal trespass warning was issued to Plaintiff due to official policy from a final policy-maker at Aledo ISD, or alternatively, the illegal trespass warning was issued pursuant to a widespread practice, so well-known and pervasive, that

---

[1]*City of El Paso v. Heinrich,* 284 S.W.3d 366, 372 (Tex. 2009).

**PLAINTIFF'S THIRD AMENDED COMPLAINT – Page 3**

CAINFEDERALAMENDEDCOMPLAINT3.wpd

the illegal practice is the *de facto* policy of Aledo ISD, or because the Aledo ISD Board of Trustees, as final policy maker, knew of the illegal trespass warning, approved the illegal actions and rationale of its employees, and by such approval, ratified the illegal actions of its employees.

21.     Defendant Aledo ISD's policy for the issuance and rescission of criminal trespass warnings is illegal, it is arbitrary and it improperly gives unfettered discretion over the issuance and rescission of criminal trespass warnings to Defendant Bohn by official policy from a final policy-maker, or alternatively, the illegal trespass warning was issued pursuant to a widespread practice, so well known and pervasive, that the illegal practice is the *de facto* policy of Aledo ISD.

22.     Plaintiff sues Defendant Collie and Defendant Bohn in their official capacities and in their individual capacities.

23.     Plaintiff's request for injunctive relief, declaratory relief and mandamus relief is allowed by Texas law, as his claims in equity are asserted against the government and government officials who act without legal or statutory authority and those actions were clearly illegal.[2]

24.     Defendants also waived any claim to immunity by their affirmative claim for relief.

25.     Defendants' acts and omissions, taken without legal authority, nor any statutory authority, implicate no sovereign-immunity[3], nor any other immunity asserted by Defendants.

## Administrative Remedies

26.     Plaintiff complains about illegal actions by Defendant Fred Collie and Defendant Susan Bohn who issued Plaintiff a criminal trespass warning under TEXAS PENAL CODE § 30.05 without any reasonable suspicion, nor any probable cause for the action and he complains about Defendant Aledo

---

[2]*Texas Educ. Agency v. Leeper,* 893 S.W.2d 432 (Tex. 1994).

[3]*Cobb v. Harrington,* 190 S.W.2d 709, 712 (Tex. 1945).

**PLAINTIFF'S THIRD AMENDED COMPLAINT – Page 4**

CAINFEDERALAMENDEDCOMPLAINT3.wpd

ISD's ratification of the illegal acts of its employees.

27.     The illegal trespass warning was issued by the individual Defendants in retaliation for Plaintiff's speech on social media criticizing Defendant Aledo ISD.

28.     The illegal trespass warning violates Plaintiff's free speech rights, including his right to speak out in public on matters of public concern.

29.     The illegal trespass warning violates Plaintiff's right of free association.

30.     The illegal trespass warning violates Plaintiff's right to procedural due process, because Defendants denied Plaintiff notice and hearing before he was banned from public property.

31.     The illegal trespass warning violates Plaintiff's right to substantive due process, as Defendants' exercise of police power issuing the trespass warning was arbitrary and unreasonable.

32.     Defendants issued the illegal trespass warning to Plaintiff and handled Plaintiff's request to rescind the trespass warning differently from their handling of other similarly situated persons, which difference in treatment violates Plaintiff's right to equal protection.

33.     The refusal by Defendants to consider and/or properly consider Plaintiff's request that the illegal trespass warning be rescinded violates Plaintiff's right to petition.

34.     The illegal trespass warning was not issued under TEXAS EDUCATION CODE § 37.107, as is clear from the warning itself, which states: "The intent of this letter is to serve notice of a Criminal Trespass Warning under Texas Penal Code Section 30.05, 'Criminal Trespass.'"

35.     The illegal trespass warning was issued without probable cause and without reasonable suspicion, which violates TEXAS PENAL CODE § 30.05.

36.     The illegal trespass warning violates TEXAS GOVERNMENT CODE § 551.007.

37.     Plaintiff's complaints of violations of free speech rights; of his right to freedom of

**PLAINTIFF'S THIRD AMENDED COMPLAINT – Page 5**

CAINFEDERALAMENDEDCOMPLAINT3.wpd

association; of his procedural and substantive due process rights; of his right to petition; of civil rights violations; violations of TEXAS PENAL CODE § 30.05; and violations of TEXAS GOVERNMENT CODE § 551.007, are not complaints about violations of "school laws of the State of Texas".

38.    Plaintiff does not complain about any injury caused by "(1) the school laws of this state", nor about "(2) actions or decisions of any school district board of trustees that violate: (A) the school laws of this state; or (B) a provision of any written employment contract ...".

39.    TEXAS EDUCATION CODE § 37.107 does not apply to this action and Plaintiff is not required to exhaust administrative remedies to pursue his claims, because the question of "[whether Plaintiff's] constitutional rights were violated ... is a question the courts - not the Commissioner - must decide.  See *McIntyre v. El Paso Independent School District*, 499 S.W.3d 820 (Tex. 2016).

### Factual Allegations[4]

40.    On September 10, 2019, Plaintiff received a call from an employee of Defendant Aledo ISD who advised that Plaintiff's son had been assaulted at school by another student.[5]

41.    When Plaintiff's son was assaulted, he fell from his chair, he struck his head on a door, then he lay on the floor, with his eyes closed, not moving, unconscious.[6]

42.    April Wilson, a substitute teacher, did not observe the assault, she heard nothing in the "very small and quiet class" before the assault, but she called the nurse when Plaintiff's son lay on the

---

[4]Plaintiff supports and verifies some of the factual allegations by his Affidavit, attached.

[5]Affidavit of Charles "Chad" Cain, III, P1, ¶ 4.

[6]Aledo ISD document production, Nurse Progress Note, DEFs 00233; and Aledo ISD Incident Report, DEFs 00312.

**PLAINTIFF'S THIRD AMENDED COMPLAINT – Page 6**

CAINFEDERALAMENDEDCOMPLAINT3.wpd

floor, with his eyes closed, not moving.[7]

43.     When nurse Amber Seastrunk arrived at the class, Plaintiff's son was still on the floor with his eyes closed, he responded to verbal commands and he was taken away by wheelchair.[8]

44.     Plaintiff also learned the bully's mother is an Aledo ISD teacher.[9]

45.     School principal, Mandy Musselwhite, an employee of Aledo ISD, told Plaintiff that the student who assaulted Plaintiff's son was likely to receive an in-school suspension.[10]

46.     On September 11, 2019, Plaintiff spoke to assistant principal, Michael Diaz, an Aledo ISD employee, who said the perpetrator of the assault on Plaintiff's son had been punished.[11]

47.     Diaz also said the punishment "was too harsh" in his opinion.[12]

48.     On September 12, 2019, Plaintiff received witness statements from Diaz, including the bully's confession, which blamed Plaintiff's son for being "annoying" and making loud noises.[13]

49.     On September 13, 2019, Plaintiff learned the perpetrator of the assault on his son was participating with the football team while he was still suspended.[14]

50.     On September 16, 2019, assistant principal Diaz told Plaintiff the problem of his son's

---

[7]April Wilson Statement, September 20, 2019, DEFs 235; and Susan Bohn Deposition, P150, L21-23.

[8]Nurse Progress Note, DEFs 00233.

[9]Cain Affidavit, P1, ¶6.

[10]Id. at P1-2, ¶7.

[11]Id. at P2, ¶8.

[12]Id.

[13]Id. at P2, ¶9.

[14]Id. at P2, ¶10.

**PLAINTIFF'S THIRD AMENDED COMPLAINT – Page 7**

CAINFEDERALAMENDEDCOMPLAINT3.wpd

assault "was getting taken care of", but Diaz "couldn't talk about punishment."[15]

51.     When Plaintiff asked Diaz how the classroom teacher failed to stop the assault or even observe the assault, Diaz explained that the teacher was helping another student.[16]

52.     Plaintiff also asked how the teacher did not hear or observe the loud noises the bully claimed Plaintiff's son made, but Diaz, contradicted April Wilson's statement of a "very small and quiet class" and said it was "a loud classroom and half the kids didn't want to be in the class ... ."[17]

53.     Diaz told Plaintiff how to file a complaint with the Aledo ISD police department.[18]

54.     On September 16, 2019, Plaintiff met with Aledo ISD police officer Wes Cummins and attempted to file assault charges and he told Cummins his son had suffered a concussion.[19]

55.     Trainer Elizabeth Wien ("Nguyen" in Bohn's deposition) diagnosed the concussion.[20]

56.     Officer Cummins did not seem to believe an assault case was allowed, as Cummins said he needed to check with his boss, Defendant Collie, to "make sure they had a good offense."[21]

57.     On September 16, 2019, by email, the bully's football coach, Joe Roquemore, also an employee of Aledo ISD, said he could not discuss punishment with Plaintiff.[22]

58.     On September 17, 2019, officer Cummins told Plaintiff he needed confirmation that

---

[15]Id. at P1, ¶11.

[16]Id. at P2, ¶12.

[17]Id. at P2, ¶13; and Wilson Statement, September 20, 2019, DEFs 235.

[18]Cain Affidavit, P2, ¶14.

[19]Id. at P2, ¶15; and Aledo ISD Incident Report, DEFs 00312.

[20]Aledo ISD Incident Report, DEFs 00312; and Bohn Deposition, P152, L8-10.

[21]Cain Affidavit, P2, ¶15.

[22]Aledo ISD document production DEFs 00276; and Cain Affidavit, P3, ¶19 (Plaintiff's Affidavit says the email was on September 19, 2019, but the email shows September 16, 2019).

**PLAINTIFF'S THIRD AMENDED COMPLAINT – Page 8**

CAINFEDERALAMENDEDCOMPLAINT3.wpd

Plaintiff's son suffered a concussion due to the assault, in order to pursue the assault case.[23]

59.     Cummins investigated the assault with another officer, Stephanie Alvarez, and a criminal case for assault was submitted to the Parker County District Attorney.[24]

60.     The same day, Plaintiff also filed a "Bully Report" with Aledo ISD.[25]

61.     Officer Cummins received the Nurse Progress Note and a statement from athletic trainer Wien to confirm the concussion Plaintiff's son suffered from the assault.[26]

62.     On September 18, 2019, Plaintiff asked Musselwhite why the bully was participating at football while suspended from school.  Musselwhite said "the athletic department was completely different from the school and gave their own punishment."[27]

63.     Plaintiff told Musselwhite he wanted to appeal, she advised about appeal procedures, she emailed Plaintiff, and she sent a copy of the email to Aledo ISD athletic director, Steve Wood.[28]

64.     Plaintiff also emailed athletic director Steve Wood on September 18, 2019 to request additional athletic department punishment for the bully.[29]

65.     Officer Cummins interviewed the perpetrator on September 18, 2019 and he admitted the assault in the presence of his mother, Mary Pennington (Neill), and father in that interview.[30]

---

[23]Aledo ISD Incident Report, DEFs 00312.

[24]Fred Collie Deposition, P34, L7-15; and Aledo ISD Incident Report, DEFs 00312.

[25]Cain Affidavit, P2, ¶16.

[26]Aledo ISD Incident Report, DEFs 00312.

[27]Cain Affidavit, P2, ¶14.

[28]DEFs 00296-00297.

[29]DEFs 00299.

[30]Aledo ISD Incident Report, DEFs 00312.

**PLAINTIFF'S THIRD AMENDED COMPLAINT – Page 9**

CAINFEDERALAMENDEDCOMPLAINT3.wpd

66.     The same day officer Cummins interviewed the perpetrator, he also gave Plaintiff a case number for the assault.[31]

67.     On September 20, 2019, Plaintiff spoke with athletic director Wood to request additional athletic department punishment for the perpetrator.[32]

68      Wood told Plaintiff that Pennington (Neill)'s son had been in trouble before, he thought the boy's conduct had improved; Wood said he was "sorry to hear what happened"; but Wood dismissed Cain's complaints stating: "life wasn't always fair".[33]

69.     Wood told Plaintiff he would ask the perpetrator's family if they would agree to additional punishment if Plaintiff would drop his request that assault charges be filed.[34]

70.     On September 20, 2019, Plaintiff posted of his disappointment and frustration with Aledo ISD's handling of the assault of his son and the light punishment for the perpetrator.[35]

71.     Plaintiff received supportive responses, comments, and information that the perpetrator had been sent before to alternative school for bullying; that he attended a football game while suspended from school; and that his mother was an Aledo ISD employee.[36]

72.     On September 22, 2019, Plaintiff again posted to express frustration over the bullying of his son and he wondered what punishment a student who was not a teacher's son would receive.[37]

---

[31]Cain Affidavit, P3, ¶20.

[32]Id. at P3, ¶21

[33]Id.

[34]Id. at P3, ¶22.

[35]Id. at P3, ¶23; and Social media posts, DEFs 00016; and DEFs 00083.

[36]Social media posts, DEFs 00016, DEFs 00022, DEFs 00043, and DEFs 00595-00597.

[37]Cain Affidavit, P4, ¶25.

**PLAINTIFF'S THIRD AMENDED COMPLAINT – Page 10**

CAINFEDERALAMENDEDCOMPLAINT3.wpd

73.     In response to Plaintiff's social media posts, some advocated violence against the perpetrator, but Plaintiff sought to dissuade such comments and behavior.[38]

74.     At 7:22 p.m. on September 22, 2019, Mary Pennington (Neill), the mother of the perpetrator, who is an Aledo ISD employee, complained to assistant superintendent Lynn McKinney, to Collie and to principal Musselwhite about "comments made by Chad Cain on Facebook."[39]

75.     The next morning, at 7:43 a.m. on September 23, 2019, Pennington (Neill), again complained to Defendant Collie, stating as follows:

> "**we are still having problems with [Plaintiff] posting our child's full name. There are others as well.  This is from this morning. We are very concerned about this issue.**"[40]

76.     Minutes later, at 7:55 a.m., Defendant Collie responded: "Mrs. Neill, I am aware of and addressing the issue. When you have the opportunity, please send me all related posts."[41]

77.     Still later, around 11:33 a.m., Pennington (Neill) emailed Collie again, stating:

> "**Thank you for your response.  I have a lot of comments from the post but certainly not all 400 plus. I will forward over some now during my lunch time.**"[42]

78.     Defendant Collie abused his police power in his effort to aid an Aledo ISD employee, Pennington (Neill), who personally objected to Plaintiff's legal conduct on Facebook.

79.     Around 2:30 p.m. on September 23, 2019, Plaintiff visited his son's school to appeal the bully's punishment and ask about victim's assistance, but the school's receptionist did not know

---

[38]Social media posts, DEFs 00022 and DEFs 00595.

[39]DEFs 00042 and DEFs 00615.

[40]Id. at DEFs 00602.

[41]Id. at DEFs 00601.

[42]Id.

**PLAINTIFF'S THIRD AMENDED COMPLAINT – Page 11**

CAINFEDERALAMENDEDCOMPLAINT3.wpd

about victim's assistance.[43]

80.     The receptionist called principal Musselwhite to the school office and Defendant Collie arrived with Musselwhite to record her conversation with Plaintiff.[44]

81.     Defendant Collie positioned himself in the school office where he was able to record the Plaintiff, Musselwhite and their conversation.[45]

82.     Defendant Collie also recorded students who were passing through the school office as Musselwhite and Plaintiff spoke in public about the bullying and the assault on Plaintiff's son.[46]

83.     Defendant Collie then asked to "visit with [Plaintiff] in private".[47]

84.     As Defendant Collie and Plaintiff moved to a different room for the "visit in private", Collie continued to record, including the students passing through the school office.[48]

85.     Defendant Collie and Plaintiff had a private conversation that Collie also recorded.[49]

86.     Defendant Collie repeatedly told Cain he was talking "cop to cop".[50]

87.     Plaintiff is a police officer at the Fort Worth Police Department, which Collie knew.[51]

88.     Defendant Collie demanded Plaintiff stay off Facebook.

---

[43]Cain Affidavit, P4, ¶26.

[44]Id at P4, ¶27; and Aledo ISD document production, Collie bodycam video, DEFs 00581 (at 01:08).

[45]Cain Affidavit, P4, ¶28; and Collie body cam video Id.

[46]Id. (at 01:25, 01:45, 02:04).

[47]Id. (at 02:09).

[48]Id.

[49]Id. (at 02:23 to 29:12).

[50]Id. (at 08:01; 08:34; and 08:36).

[51]Id. (at 03:34).

**PLAINTIFF'S THIRD AMENDED COMPLAINT – Page 12**

89.    Collie confronted Plaintiff with accusations, including, among other things:

**"I had 2 different people contact me today say that you were making threatening posts against kids on Facebook."**[52]

**"I haven't seen the posts. But I've been told that. I hope this isn't true."**[53]

**"I don't know what's going on on Facebook, I haven't looked into it yet, but I'm gonna look into it."**[54]

**"We've gotta make sure there are no threats on Facebook, that kids aren't identified on Facebook."**[55]

**"Now, do you agree with that?"**[56]

90.    Defendant Collie clearly investigated Plaintiff's social media activity, based on Collie's email that said: "Mrs. Neill, I am aware of and addressing the issue" and his comment to Plaintiff that "the [Plaintiff's] private [Facebook] group has 8,000 members".[57]

91.    Collie abused his authority as a police officer to pressure Plaintiff on behalf of Mary Pennington (Neill), a district employee, to try to convince Plaintiff to stop mentioning Pennington's son by name on Facebook and to stop criticizing Aledo ISD on Facebook.

92.    Defendant Collie knew his conduct was improper and he refused to answer Plaintiff's question: "Is this a school issue or a police issue?"[58]

93.    Collie also refused Plaintiff's request to document Plaintiff's complaint with an incident

---

[52]Id. (at 02:29).

[53]Id. (at 02:40-02:47).

[54]Id. (at 03:14-03:18).

[55]Id. (at 03:19-03:26).

[56]Id. (at 03:27).

[57]Id. (at 03:34).

[58]Id. (at 05:25).

**PLAINTIFF'S THIRD AMENDED COMPLAINT – Page 13**

CAINFEDERALAMENDEDCOMPLAINT3.wpd

report, which Collie called "unnecessary paperwork".[59]

94.     That Defendant Collie was pressuring Plaintiff due to Pennington (Neill)'s concern over her

son's name on social media is clear from Collie's comments, including:

> **"We've gotta make sure ... kids aren't identified on Facebook."**[60]

> **"Does that mitigate identifying a middle school kid on Facebook."**[61]

95.     Collie did not refer to any other "kids ... on Facebook" besides Pennington's son.

96.     Collie's pressure on Cain to stop his criticism of Aledo ISD on Facebook, included:

> **"Please, what you're doing on Facebook doesn't make a difference.  Alls it does is rile people up."**[62]

> **"Stay off Facebook, please, about this, please."**[63]

> **"you've - there's a hornet's nest here that I want to get tamped down."**[64]

97.     Collie told Plaintiff to not associate with a parent named Ben Youngblood, stating:

> **"You're dealing with a gentlemen named Ben Youngblood."**[65]

> **"Cop to cop, that's not a guy you want to be dealing with."**[66]

> **"I've dealt with Mr. Youngblood quite a bit."**[67]

---

[59]Id. (at 05:45 to 5:58).

[60]Id. (at 03:22-03:26).

[61]Id. (at 04:14-04:17).

[62]Id. (at 7:49).

[63]Id. (at 21:59).

[64]Id. (at 23:19-24:24).

[65]Id. (at 7:59).

[66]Id. (at 8:01-8:14).

[67]Id. (at 8:29-8:31).

**PLAINTIFF'S THIRD AMENDED COMPLAINT – Page 14**

**"I was told you were interacting with [Youngblood] on Facebook."**[68]

98.     Collie also asked about Plaintiff's assignment at the Fort Worth Police Department.[69]

99.     Plaintiff knew Defendant Collie was threatening to interfere with Plaintiff's job.[70]

100.    Collie followed up on his threat with a false complaint against Plaintiff to the Fort Worth Police Department about conduct Collie knows and admitted under oath was not illegal.[71]

101.    Collie also stated his intent to continue his interference with Plaintiff's employment as a police officer after "the judicial processes are complete."[72]

102.    Defendant Collie admits that up to the time of his 2:30 p.m. recorded meeting on September 23, 2019 with Chad Cain, he had not been instructed by Defendant Bohn to issue a criminal trespass warning to the Plaintiff.[73]

103.    Collie also testified that after his September 23, 2019 recorded conversation [with Plaintiff, Collie] was aware that [Plaintiff] was not going to be reasonable."[74]

104.    Defendant Collie repeatedly refused, after being asked six (6) separate times what the Plaintiff had to do to be considered "reasonable" and he refused to answer the question.[75]

105.    After Collie's threats, Plaintiff remained frustrated and disappointed by Aledo ISD's response

---

[68]Id. (at 9:03-9:06).

[69]Id. (at 8:23).

[70]Fred Collie Statement to Fort Worth Police Department; and Collie Deposition, P123, L16-21 and P183, L15 to P184, L15.

[71]Id.

[72]Collie Statement, P5.

[73]Collie Deposition, P58, L13-24.

[74]Id. at P49, L12-14.

[75]Id. at P49, L15 to P51, L2-14.

**PLAINTIFF'S THIRD AMENDED COMPLAINT – Page 15**

CAINFEDERALAMENDEDCOMPLAINT3.wpd

to the assault on his son, as he noted September 23, 2019 on the Aledo Daily Gripes page:

> **Hi Aledo! I would like for y'all to think about something. The census [sic] is that most, if not all mass school shootings were caused from bullying. If this were true and society is getting worse, will it happen here in Aledo if this school administration keeps bullying the parents by pulling out the broom for the bullys [sic]? Think about that parents!!.**[76]

106.    This post on the "Aledo Daily Gripes" social media site, was a "gripe" by Plaintiff, as the site name suggests, and it is also public speech on matters of public concern, including "bullying" at Aledo ISD and the significant public concern of "mass school shootings".[77]

107.    Plaintiff shows his social media speech addresses significant public concerns, including the existence of bullying at Aledo ISD and the connection between bullying at schools and school shootings, which relationship is, unfortunately, both well known and well documented, including in a recent study by the United States Secret Service.[78]

108.    Just two month's after Plaintiff's social media post that prompted Defendants to issue their illegal criminal trespass warning, the United States Secret Service said in "Protecting America's Schools" that "Most attackers were victims of bullying, which was often observed by others. Most of the attackers were bullied by their classmates, and for over half of the attackers the bullying appeared to be of a persistent pattern which lasted for weeks, months, or years."[79]

109.    Plaintiff's social media post on September 23, 2019 that expressed his frustration and

---

[76]See Lynn McKinney October 29, 2019 response to Chad Cain FNG grievance.

[77]Plaintiff requests the Court take judicial notice of the mass shootings on August 3, 2019 in El Paso, Texas and on August 4, 2019 in Dayton, Ohio that were significant public concerns for the entire country around the time of the September 10, 2019 assault on Plaintiff's son.

[78]See *Protecting America's Schools: A U.S. Secret Service Analysis of Targeted School Violence*, P3 (November 2019).

[79]Id.

**PLAINTIFF'S THIRD AMENDED COMPLAINT – Page 16**

CAINFEDERALAMENDEDCOMPLAINT3.wpd

disappointment over bullying and his criticism of Aledo ISD was the post that prompted the criminal trespass warning being issued on September 24, 2019, as noted in the warning itself.[80]

110.    On September 24, 2019, Plaintiff went to "the [Aledo ISD] administration building in the morning and left a Level 1 complaint form with Lynn McKinney's secretary.[81]

111.    McKinney's chronology shows Plaintiff's morning submission of his Level 1 complaint occurred before McKinney's meeting with her secretary.[82]

112.    Later in the morning, but before 12:00 noon on September 24, 2019, Defendant Collie, Defendant Bohn and Lynn McKinney all met to discuss Plaintiff's social media post.[83]

113.    At the September 24, 2019 meeting, Defendant Bohn directed Defendant Collie to issue the criminal trespass warning to Plaintiff.[84]

114.    Defendant Collie never asked Defendant Bohn why she directed Collie to issue the criminal trespass warning to Plaintiff.[85]

115.    Collie also failed to ask Defendant Bohn what she considered the "totality of the circumstances" when she directed Collie to issue the criminal trespass warning to Plaintiff.[86]

116.    The criminal trespass warning issued to Plaintiff by Defendant Collie at the direction of Defendant Bohn states the following:

---

[80]See also Collie Deposition, P29, L8-20; and criminal trespass warning dated September 24, 2019, attached to this First Amended Petition as Exhibit A

[81]Lynn McKinney Statement to Fort Worth Police Department, December 12, 2019, P2.

[82]Id.

[83]Id.; Bohn Deposition Deposition, P29, L8-20; and criminal trespass warning, Exhibit A.

[84]Collie Deposition, P29, L8-20; and Bohn Deposition, P132, L1-20 and P205, L7-11.

[85]Collie Deposition, P68, L17-21.

[86]Id. at P69, L1-7.

**PLAINTIFF'S THIRD AMENDED COMPLAINT – Page 17**

> **The intent of this letter is to serve notice of a Criminal Trespass Warning under Texas Penal Code Section 30.05, "Criminal Trespass."**
>
> **As you know, on September 23, 2019, you and I discussed the posts that you have made on Facebook recently regarding a student enrolled in Aledo ISD. Since that conversation, you have engaged in further conduct publicly on social media that has caused a significant amount of fear among our parents and staff for the safety of our students, staff, and parents on campus and at district events.**
>
> **I am writing to inform you that you are no longer authorized to be physically present on any Aledo I.S.D. property or at any Aledo I.S.D. event absent prior written approval by a school or district administrator.**
>
> **Any meeting that a campus or district administrator schedules with you will be pre-arranged and approved and will be held off-campus and at the Aledo I.S.D. Central Administration building. You may schedule meetings through Aledo Middle School Principal, Mandy Musselwhite, or Aledo I.S.D. Deputy Superintendent, Lynn McKinney.**[87]

117.    The criminal trespass warning was issued without any notice or hearing.

118.    This criminal trespass warning was issued without any information provided to  Plaintiff about his right to appeal or contest the trespass warning.[88]

119.    The criminal trespass warning references "Texas Penal Code Section 30.05, 'Criminal Trespass.'"; it acknowledges Collie's demands on September 23, 2019, described as "you and I discussed the posts that you have made on Facebook recently regarding a student enrolled in Aledo ISD"; and it says Plaintiff "engaged in further conduct publicly on social media".[89]

120.    Plaintiff is also prohibited from being "physically present on any Aledo ISD property or at any Aledo ISD event absent prior written approval by a school or district administrator."[90]

---

[87]Criminal trespass warning, Exhibit A.

[88]Collie Deposition, P153, L10-19.

[89]Criminal trespass warning, Exhibit A.

[90]Criminal trespass warning, Exhibit A.

**PLAINTIFF'S THIRD AMENDED COMPLAINT – Page 18**

121.    The trespass warning refers to naming Pennington (Neill)'s son on Facebook.[91]

122.    Defendants have repeatedly said Plaintiff's legal conduct of posting a minor's name on Facebook was a reason for the trespass warning, both before and after the lawsuit was filed.[92]

123.    The trespass warning does not say it was issued due to a "threat", nor a "threatening statement on social media"; nor "threatening posts on social media"; nor due to any "disruption".[93]

124.    Defendants only started to call Plaintiff's social media post a "threat"[94], and a "threatening statement on social media"[95]; and "threatening posts on social media"[96]; and a "disruption"[97]; and "disruptive behavior"[98], after Plaintiff submitted his grievances to Susan Bohn by letter from his lawyer on September 30, 2019, which letter said Plaintiff would file a lawsuit if the illegal trespass warning was not rescinded.

125.    Aledo ISD has no written policy on trespass warnings, but Defendant Collie knows how to issue a criminal trespass warning if a parent has allegedly "verbally threatened" an Aledo ISD

---

[91]Criminal trespass warning, Exhibit A.

[92]Joey Moore's October 1, 2019 email; Collie bodycam video, DEFs 00581 (03:22-03:26) and (at 04:14-04:17); Defendant Aledo ISD's Amended Answer to Plaintiff's Interrogatory 7, dated March 4, 2020; Defendant Collie's Amended Answer to Plaintiff's Interrogatory 7, dated March 4, 2020; and Collie Deposition, P33, L6-7 and P35, L9-12.

[93]Criminal trespass warning, Exhibit A.

[94]Collie Deposition, P29, L3-23; Bohn Deposition, P179, L24 to P180, L15.

[95]McKinney October 29, 2019 response to Chad Cain FNG grievance.

[96]Collie Deposition, P28, L15-16.

[97]Moore October 1, 2019 email; McKinney October 29, 2019 response to Chad Cain FNG grievance; Defendant Aledo ISD's Amended Answer to Plaintiff's Interrogatory 7, dated March 4, 2020; Defendant Collie's Amended Answer to Plaintiff's Interrogatory 7, dated March 4, 2020

[98]Collie Deposition, P52, L2.

**PLAINTIFF'S THIRD AMENDED COMPLAINT – Page 19**

CAINFEDERALAMENDEDCOMPLAINT3.wpd

employee or allegedly engaged in "aggressive and threatening behavior".[99]

126.    Defendant Collie also knows how to issue a criminal trespass warning if a parent has allegedly made social media "posts on Facebook [that] are threatening to an Aledo ISD student and indicate [a parent's alleged] propensity towards violence".[100]

127.    Collie states his purported reason for a trespass warning on the warning itself.[101]

128.    At deposition, Defendant Collie admitted "None of [the Plaintiff's comments on social media] were illegal."[102]

129.    Defendant Collie also testified "None of [the Plaintiff's actions] were illegal ...".[103]

130.    Collie admitted he did not charge the Plaintiff with any crime, nor cite the Plaintiff for any offense, because "the elements for an offense for a crime had not been met."[104]

131.    Defendant Collie also testified that Plaintiff's conduct did not amount to an assault by threat under TEXAS PENAL CODE § 22.01, nor did Plaintiff's conduct meet the elements of a "terroristic threat under TEXAS PENAL CODE § 22.07."[105]

132.    Although Collie knew Plaintiff's conduct was not a threat under TEXAS PENAL CODE § 22.01, he knew Plaintiff's conduct was not a terroristic threat under TEXAS PENAL CODE § 22.07, and he

---

[99]Collie Deposition, P153, L1-15; see also Randy Dixon Criminal Trespass Warning, Exhibit G-1 to Plaintiff's Response to Summary Judgment filed on April 9, 2019.

[100]See Aaron Smith Criminal Trespass Warning, Exhibit G-2 to Plaintiff's Response to Summary Judgment filed on April 9, 2019.

[101]Id.; Collie Deposition, P153, L1-15; and Dixon Trespass Warning, Exhibit G-1.

[102]Collie Deposition, P55, L3-5.

[103]Id. at P60, L9-12.

[104]Id. at P67, L5-8.

[105]Id.

**PLAINTIFF'S THIRD AMENDED COMPLAINT – Page 20**

CAINFEDERALAMENDEDCOMPLAINT3.wpd

did not know Bohn's reasoning for her decision to issue the trespass warning, he still took penal

action against Plaintiff and issued a trespass warning under TEXAS PENAL CODE § 30.05.[106]

133.   Consistent with his practice on the Dixon and Smith trespass warnings, Collie also stated the

reasons for Plaintiff's criminal trespass warning in the warning itself, as follows:

> **"on September 23, 2019, you and I discussed the posts that you have made on Facebook recently regarding a student enrolled in Aledo ISD. Since that conversation, you have engaged in further conduct publicly on social media ..."**

134.   Defendants have also repeatedly said Plaintiff's legal conduct of posting a minor's name on

Facebook was the reason for the trespass warning, before and after the lawsuit was filed.[107]

134.   As Defendant Collie testified that "None of [Plaintiff's actions] were illegal", "None of

[Plaintiff's social media posts] were illegal", none of Plaintiff's posts were a "threat", and the reason

for the criminal trespass warning is Plaintiff's legal posts on social media, Plaintiff contends it is

clear the illegal retaliation against him by Defendant Collie and Defendant Bohn was for Plaintiff's

protected speech on social media that Defendants were upset by and/or disagreed with.[108]

135.   Plaintiff is prohibited from being "physically present on any Aledo ISD property or at any

Aledo ISD event absent prior written approval by a school or district administrator."[109]

136.   The active trespass warning prohibits Plaintiff from attending Aledo ISD Board meetings,

Aledo ISD school sporting events, band concerts, orchestra concerts, football games at the Aledo

---

[106]Id.; Collie Deposition, P55, L3-5; P60, L9-12; P68, L17-21; and P69, L1-7.

[107]Moore October 1, 2019 email; Collie bodycam video, DEFs 00581 (at 03:22-03:26) and (at 04:14-04:17); Defendant Aledo ISD's Amended Answer to Plaintiff's Interrogatory 7, dated March 4, 2020; Defendant Collie's Amended Answer to Plaintiff's Interrogatory 7, dated March 4, 2020; and Collie Deposition, P33, L6-7 and P35, L9-12.

[108]Cain Affidavit, P5, ¶35.

[109]Id. at P5, ¶39; and criminal trespass warning, Exhibit A.

**PLAINTIFF'S THIRD AMENDED COMPLAINT – Page 21**

ISD football stadiums and football games at "the Cowboy[s'] stadium in Arlington ... on the Aledo side with the Aledo people ... Not on the other side." which are all Aledo ISD events.[110]

137.    The trespass warning prohibits Plaintiff from driving his son onto school grounds, from participating in his son's school activities and from attending his son's football games.[111]

138.    The locations where Plaintiff drops off his son for school, for football practices and the football field where the Plaintiff's son plays games are all public areas.[112]

139.    Plaintiff contends his exclusion from participating in his son's educational activities has caused him, and will continue to cause him irreparable harm if it is not rescinded.[113]

140.    Plaintiff cannot precisely quantify the harm caused by the trespass warning, but he is harmed, his son is humiliated and Plaintiff is excluded from participating in school activities.[114]

141.    Plaintiff was excluded from nearly all of his son's football games.

142.    When Plaintiff requested to drive onto campus to pick up his son when it was raining, his request was denied by Aledo ISD.

143.    When Plaintiff requested to go on campus to attend his son's non-school sponsored baseball practices, his request was denied by Aledo ISD.

144.    After Plaintiff received the criminal trespass warning from Defendant Collie on September 24, 2019, he timely filed grievances under Aledo ISD policy FNG (Local) and Aledo ISD policy CKE (Local) on September 30, 2019.

---

[110]Id. at P5, ¶40; criminal trespass warning; and Collie Deposition, P118, L17-19.

[111]Cain Affidavit, P5, ¶41.

[112]Id. at P5, ¶42; and Collie Deposition, P112, L9 to P117, L20.

[113]Id. at P5 ¶43.

[114]Id. at P5 ¶44.

**PLAINTIFF'S THIRD AMENDED COMPLAINT – Page 22**

145.   Plaintiff specifically requested on October 1, 2019 that Defendant Bohn hear the grievances because "Superintendent Bohn is Chief Collie's direct supervisor, so she is the appropriate level 1 administrator [at Aledo ISD] to hear the grievance.[115]

146.   The FNG (Local) policy states that "[the Aledo ISD] Board encourages students and parents to discuss their concerns with the appropriate teacher, principal, or other campus administrator who has the authority to address the concerns."[116]

147.   The Aledo ISD Board of Trustees delegated authority to Defendant Bohn to set policy on the issuance and rescission of criminal trespass warnings.[117]

148.   Aledo ISD has no written policy for the issuance of criminal trespass warnings under the TEXAS PENAL CODE.[118]

149.   Defendant Bohn has not submitted any policy on issuance and rescission of criminal trespass warnings to the Aledo ISD Board of Trustees for approval.[119]

150.   Aledo ISD's unwritten policy on trespass warnings is Defendant Bohn will:

**"make the determination that our students, staff, some other person on our campus could be in danger if we allow someone to come onto our property or if it will cause substantial disruption -- it's typically related to safety -- then we may issue that, a warning."**[120]

151.   Aledo ISD's policy for the issuance and rescission of criminal trespass warnings is the same "for someone who has made a threat ... as for someone has not made a threat".

---

[115]Moore October 1, 2019 email, P2; and Aledo ISD policy FNG (Local), P2.

[116]Aledo ISD policy FNG (Local), P2.

[117]Bohn Deposition, P29, L2-20.

[118]Id. at P28, L21 to P29, L1.

[119]Id. at P29, L12-20.

[120]Id. at P29, L6-11.

**PLAINTIFF'S THIRD AMENDED COMPLAINT – Page 23**

CAINFEDERALAMENDEDCOMPLAINT3.wpd

152.    Aledo ISD's policy for the issuance and rescission of criminal trespass warnings does not require giving notice or warning that a person may receive a trespass warning.[121]

153.    At Aledo ISD, criminal trespass warnings last "ad infinitum", which means "forever", according to Defendant Collie.[122]

154.    Defendant Bohn exercised that authority when she directed Defendant Collie to issue the criminal trespass warning to Chad Cain.[123]

155.    At deposition, Bohn admitted she has exclusive authority at Aledo ISD over the issuance and rescission of criminal trespass warnings.[124]

156.    Bohn refused to hear Plaintiff's grievances over the criminal trespass warning issued to him by Defendant Collie, Bohn refused to speak to Cain about the criminal trespass warning informally, and she refused to talk to Cain about the trespass warning when Cain appeared before the Aledo ISD Board of Trustees.[125]

157.    After Defendant Bohn received several letters and emails from Plaintiff's counsel about the trespass warning, after Bohn received 2 grievances from Cain over the trespass warning, after Cain's counsel specifically requested that Bohn hear his grievances over the trespass warning, after Bohn refused to hear Plaintiff's grievances over the criminal trespass warning and after Bohn refused to speak to Cain about the criminal trespass warning, she lied in a sworn statement to the Fort Worth

---

[121]Id. at P32, L11 to P33, L19.

[122]Collie Deposition, P153, L1-9.

[123]Bohn Deposition, P21, L5-7.

[124]Id. at P32, L3-9; P230, L4-8; and P230, L19-22.

[125]Moore October 1, 2019 email, P1

**PLAINTIFF'S THIRD AMENDED COMPLAINT – Page 24**

Police Department, stating "Mr. Cain has never contacted me to discuss this matter."[126]

158.   Although Bohn refused to hear Plaintiff's grievance, she never delegated to Lynn McKinney any authority to lift and/or rescind criminal trespass warnings.[127]

159.   Bohn also never communicated to McKinney, neither verbally, nor in writing, that McKinney had any authority to lift criminal trespass warnings at Aledo I.S.D.[128]

160.   Plaintiff's grievances over the criminal trespass warning were heard by McKinney, who did not have any authority to lift or rescind the criminal trespass warning.[129]

161.   When McKinney denied Plaintiff's grievances over the criminal trespass warning, he complained to the Aledo I.S.D. Board of Trustees to ask that they lift the trespass warning.[130]

162.   The Aledo I.S.D. Board of Trustees denied Chad Cain's request that they lift and/or rescind the trespass warning.[131]

163.   Plaintiff contends the Aledo I.S.D. Board of Trustees ratified Defendants' illegal criminal trespass warning by its refusal to rescind the illegal trespass warning.

164.   No one ever told Plaintiff the criminal trespass warning was issued under the TEXAS EDUCATION CODE, nor did he know until Defendant Collie's deposition that Defendant Bohn directed that the criminal trespass warning be issued.

165.   Plaintiff contends he need not appeal the Board's refusal to rescind the trespass warning to

---

[126]Bohn Statement to Fort Worth Police Department, P2.

[127]Bohn Deposition, P244, L11-21.

[128]Id. at P244, L11-21.

[129]Id. at P242, L22 to P244, L21.

[130]Unsworn Declaration of Susan Bohn, P3, ¶8.

[131]Id.

**PLAINTIFF'S THIRD AMENDED COMPLAINT – Page 25**

CAINFEDERALAMENDEDCOMPLAINT3.wpd

the Commissioner of Education, because it was issued under the TEXAS PENAL CODE.

166.    Plaintiff complains that Aledo ISD's policy for the issuance and rescission of criminal trespass warnings that does not require any notice or warning to a person who may receive a trespass warning is illegally vague, overly broad and unconstitutional because it has denied Plaintiff and others' their substantive and procedural due process rights.

167.    At Aledo I.S.D., criminal trespass warnings do not provide any notice of how to appeal the warning, nor how to get the trespass warning lifted.[132]

168.    At Aledo I.S.D., there is no policy on how to get criminal trespass warnings lifted, other than upon the whim of the school superintendent.[133]

169.    Plaintiff complains that the criminal trespass warning is illegal and unconstitutional because he was not given any notice, nor any hearing, before the trespass warning was issued.

170.    Plaintiff complains that the criminal trespass warning is illegal and unconstitutional because it fails to provide Plaintiff notice on how to appeal the trespass warning.

## Relief for Violations of Civil Rights under 42 U.S.C. § 1983

171.    Plaintiff re-alleges and incorporates the allegations in paragraphs 8 through 166 above.

172.    Defendants, under color of law, statute, ordinance, regulation, custom, or usage, caused Plaintiff, a citizen of the United States, a deprivation of rights, privileges and immunities secured by the United States Constitution and laws of the United States and of the State of Texas.

173.    Plaintiff shows that Defendants shall properly be held liable for the injuries they caused

---

[132]Collie Deposition, P153, L1-15; see also Randy Dixon Criminal Trespass Warning, Exhibit G-1; and Aaron Smith Trespass Warning, G-2.

[133]Collie Deposition, P153, L15-19.

**PLAINTIFF'S THIRD AMENDED COMPLAINT – Page 26**

CAINFEDERALAMENDEDCOMPLAINT3.wpd

Plaintiff in this action at law and in equity, which Plaintiff pursues for redress.

174.    Plaintiff also shows that he seeks injunctive relief and/or declaratory relief to the extent available under 42 U.S.C. § 1983.

## **Denial of Due Process/Denial of Due Course of Law**

**Procedural Rights**

175.    Plaintiff re-alleges and incorporates the allegations in paragraphs 8 through 166 above.

176.    Plaintiff has a property right and constitutionally protected liberty interests that permit him to go to or remain in public places, for lawful purposes, including the public areas of Aledo ISD property for the lawful purpose of participating in his son's educational activities, for observing his son's football games, for attending his son's baseball practices and for other legal activities, which property rights and/or liberty interests the Defendants have denied him and/or deprived him of.[134]

177.    Defendants deprived Plaintiff of his property rights and/or liberty interests without due course of law by the criminal trespass warning that was issued without notice or hearing and without any information to advise Plaintiff of his right to appeal the trespass warning.

178.    Plaintiff alleges the criminal trespass warning issued to him without notice, hearing, or information to advise him of any right of appeal was issued by Defendant Collie and Defendant Bohn without probable cause, nor reasonable suspicion, and the warning violates Texas law.

179.    Plaintiff alleges that Defendants can point to no specific and articulable facts, together with rational inferences therefrom, that could possibly lead them reasonably to believe Plaintiff's conduct warranted the illegal criminal trespass warning Defendants issued to Plaintiff.

---

[134]*Anthony v. State*, 209 S.W.3d 296, 305 (Tex. App.  Texarkana, 2006); and *Vincent v. City of Chester*, 805 F.3d 543, 548 (5th Cir. 2015).

**PLAINTIFF'S THIRD AMENDED COMPLAINT – Page 27**

CAINFEDERALAMENDEDCOMPLAINT3.wpd

180.    Plaintiff alleges the trespass warning issued to him without notice, hearing, or information to advise him of any right to appeal the trespass warning was issued by Defendant Collie and Defendant Bohn without probable cause, nor reasonable suspicion, and it violates Texas law.

**Substantive Rights**

181.    Plaintiff alleges no right is held more sacred, nor is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law.

182.    Similarly, an individual's decision to remain in a public place of his choice is as much a part of his liberty as the freedom of movement inside frontiers that is "a part of our heritage[,]"[135]

183.    Plaintiff alleges that Defendants have illegally deprived him of his right to be free from restraints and/or interference by their issuance of the trespass warning and their refusal to rescind it. Plaintiff has been deprived of a life, liberty and/or property interest in an arbitrary and capricious manner by the illegal actions and omissions of Defendants.[136]

184.    Defendants' exercise of police power fails to comply with substantive due process principles, as it is and has been arbitrary and unreasonable.[137]  The Defendants' actions and omissions violate substantive due process because they have been arbitrary and unreasonable.

185.    The criminal trespass warning was issued improperly and arbitrarily, while it unreasonably prohibits Plaintiff's participation in his son's education; it impermissibly, arbitrarily and unreasonably denies him reasonable access to school administrators; the warning illegally prohibits

---

[135]*Kent v. Dulles,* 357 U.S. 116, 126 (1958).

[136]*Saucedo-Falls v. Kunkle*, 299 Fed. App'x 315, 319 (5th Cir. 2008).

[137]*City of San Antonio v. Tplp Office Park*, 218 S.W.3d 60, 64-65 (Tex. 2007) (citing *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 938 (Tex.1998).

**PLAINTIFF'S THIRD AMENDED COMPLAINT – Page 28**

him from attending Aledo ISD board meetings; and it illegally excludes him from public areas at Aledo ISD, with no opportunity to appeal the deprivations of his rights, which violates the guarantee of due course of law under the Texas Constitution, Art. I, § 19 and the guarantees.

186.    As a matter of FOURTEENTH AMENDMENT substantive due process, a state government official may incur liability "by violating fundamental constitutional rights".[138]  This is what Defendants have done here, by violating Plaintiff's free speech rights, his right to petition the government and by denying him of or punishing him for exercising his right of association.

187.    Aledo ISD's vague, arbitrary, unwritten policy on trespass warnings allows Defendant Bohn to "make the determination that our students, staff, some other person on our campus could be in danger ... ."[139]  This vague, arbitrary policy applies in the same manner "for someone who has made a threat ... as for someone has not made a threat".[140]  This vague, arbitrary policy does not require notice or hearings for persons who receive trespass warnings.[141]  And this vague, arbitrary policy allows criminal trespass warnings to last "forever".[142]  This vague, arbitrary, unwritten policy on criminal trespass warnings is the very recipe for the illegal, unconstitutional result here.

188.    Plaintiff seeks injunctive relief, declaratory relief and/or mandamus relief including but not limited to rescission of the criminal trespass warning issued by Defendant Collie and Defendant Bohn, which deprives Plaintiff of his property rights without due course of law.

---

[138]*Quickie Chickie, Inc. v. Sexton*, 194 F. App'x 259, 261 (5th Cir. 2006) (citing *Brennan v. Stewart*, 834 F.2d 1248, 1256 (5th Cir. 1988).

[139]Id. at P29, L6-11.

[140]Id. at P32, L6-9.

[141]Id. at P32, L11 to P33, L19.

[142]Collie Deposition, P153, L1-9.

**PLAINTIFF'S THIRD AMENDED COMPLAINT – Page 29**

CAINFEDERALAMENDEDCOMPLAINT3.wpd

## Equal Rights Under Law/Denial of Equal Protection

189.    Plaintiff re-alleges and incorporates the allegations in paragraphs 8 through 166 above.

190.    The actions of Defendants to deprive Plaintiff of his equal rights guaranteed by the Texas Constitution, Art. I, § 3 and by the FOURTEENTH AMENDMENT to the United States Constitution, when others similarly situated, were not also deprived of their rights.

191.    Plaintiff seeks injunctive relief, declaratory relief and/or mandamus relief including but not limited to rescission of the criminal trespass warning issued by Defendant Collie and Defendant Bohn, which denies Plaintiff's rights allowed to other similarly situated individuals given an opportunity to have their trespass warnings lifted, which opportunity was denied to Plaintiff.

## Denial of Right to Free Speech

192.    Plaintiff re-alleges and incorporates the allegations in paragraphs 8 through 166 above.

193.    Plaintiff shows the actions of Defendants to deprive him of his right to "speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege", as guaranteed by the Texas Constitution, Art. I, § 8 and the FIRST AMENDMENT to the United States Constitution.

194.    Plaintiff shows the criminal trespass warning issued by Defendant Collie at the direction of Defendant Bohn, which was ratified by the governing body of Defendant Aledo ISD, is the functional equivalent of a law that curtails Plaintiff's freedom of speech in violation of Texas Constitution, Art. I, § 8.

195.    In the alternative, Plaintiff shows the unwritten policy of Defendant Aledo ISD, which allows Defendant Bohn the unfettered exercise of discretion over the issuance and rescission of the trespass warning, which authority Defendant Bohn holds, as delegated by the governing body of Defendant Aledo ISD, is the functional equivalent of a law that curtails Plaintiff's freedom of speech in

**PLAINTIFF'S THIRD AMENDED COMPLAINT – Page 30**

CAINFEDERALAMENDEDCOMPLAINT3.wpd

violation of Texas Constitution, Art. I, § 8.

196.    Plaintiff shows his free speech right is a fundamental right.  His speech was on matters of public concern, including the existence of bullying at Aledo ISD and the clear connection between bullying at schools and school shootings, which relationship is, unfortunately both well known and well documented, including recently by the United States Secret Service.

197.    Plaintiff is not an employee of Defendant Aledo ISD, he is not a student of Defendant Aledo ISD, his speech was not delivered on or at any Aledo ISD property, his speech was not directed at Aledo ISD, his speech was not a threat, his speech did not create any disruption of activities at Aledo ISD, and Defendants have no legal authority to restrict, nor limit his speech, nor do Defendants have any legal authority to punish Plaintiff or retaliate against Plaintiff for his speech.

198.    Plaintiff seeks injunctive relief, declaratory relief and/or mandamus relief including but not limited to rescission of the criminal trespass warning issued by Defendant Collie at the direction of Defendant Bohn, which trespass warning was issued in retaliation for Plaintiff's exercise of his fundamental right to free speech and/or which trespass warning has the effect of limiting and/or restricting Plaintiff's free speech rights.

## Denial of Right to Freely Associate and Assemble

199.    Plaintiff re-alleges and incorporates the allegations in paragraphs 8 through 166 above.

200.    Plaintiff shows Defendants have deprived him of his right to "in a peaceable manner ... assemble together for their common good", as guaranteed by the Texas Constitution, Art. I, § 27.

201.    Plaintiff shows the criminal trespass warning issued by Defendant Collie at the direction of Defendant Bohn, and ratified by the governing body of Defendant Aledo ISD, prohibits Plaintiff from freely associating and/or assembling in violation of Texas Constitution, Art. I, § 27 and the

**PLAINTIFF'S THIRD AMENDED COMPLAINT – Page 31**

FIRST AMENDMENT to the United States Constitution.

202.    In the alternative, Plaintiff shows the threats and retaliation by Defendants for Plaintiff's association with another Aledo ISD parent, as noted by Defendant Collie: "You're dealing with a gentlemen named Ben Youngblood"[143]; and "Cop to cop, that's not a guy you want to be dealing with"[144]; interferes illegally with Plaintiff's free exercise of his right to assemble together with others for their common good, in violation of Texas Constitution, Art. I, § 27 and his rights of association under the FIRST AMENDMENT to the United States Constitution.

## Denial of Right to Petition

203.    Plaintiff re-alleges and incorporates the allegations in paragraphs 8 through 166 above.

204.    Plaintiff shows the actions of Defendants deprive him of his right to petition "those invested with the powers of government for redress of grievances or other purposes", as guaranteed by the Texas Constitution, Art. I, § 27 and the FIRST AMENDMENT to the United States Constitution.

205.    The right to petition the government is a fundamental right that predates the U.S. Constitution.  In 1641, the Massachusetts Body of Liberties guaranteed freedoms of speech and petition at public meetings, so "Every man.. . shall have liberty to.. . present any necessary motion, complaint, petition, Bill or information."[145]  The English Bill of Rights of 1689 affirmed "the right of the subjects to petition the King and all commitments and prosecutions for such petitioning are illegal."[146]  "[T]he right to petition the government for redress is a fundamental part of the republican

---

[143]Id. (at 7:59).

[144]Id. (at 8:01-8:14).

[145]MASSACHUSETTS BODY OF LIBERTIES, 12 (1641).

[146]THE BILL OF RIGHTS (1689), 1 Will. & Mary.

**PLAINTIFF'S THIRD AMENDED COMPLAINT – Page 32**

form of government with its roots extending back to the Magna Charta."[147]

206.    More than thirty years ago in *Sayre v. Mullins*[148], the Texas Supreme Court held, in the employment context, that the right to grieve is the right to be heard.. In *City of Round Rock v. Rodriguez*, the Texas Supreme Court interpreted TEXAS GOVERNMENT CODE § 617.005 as the right of public employees "to present grievances ...".[149]  The Fifth Circuit has recognized grievance rights must allow "access to those in a position of authority in order to air their grievances".[150]  The Corpus Christi Court of Appeals has twice held that "[h]aving the right to present grievances necessarily implies that someone in a position of authority is required to hear [the grievances] even though he is under no legal compulsion to take any action to rectify them."[151]

207.    Defendants in this case simply denied Plaintiff any real right to grieve the trespass warning they issued to him by refusing to allow Plaintiff's grievance to be heard by a person with the authority to remedy the grievance, which Plaintiff alleges is a denial of his right to petition.

208.    Plaintiff appealed the criminal trespass warning to Defendant Bohn, who as Collie's

---

[147]*Corpus Christi Independent School District v. Padilla*, 709 S.W.2d 700, 705 (Tex.App.  Corpus Christi 1986, no writ).

[148]681 S.W.2d 25, 28 (Tex. 1984) (construing TEX. REV. CIV. STAT. art. 5154c.  Article 5154c is the predecessor to TEX. GOV'T CODE § 617.  See Act of April 17, 1947, 50th Leg., R.S., ch. 135, 1947 Tex. Gen. Laws 231, 231-32, *repealed and reenacted by* Act of May 4, 1993, 73d Leg., R.S., ch. 268, § 46, 1993 Tex. Gen. Laws 583, 686, 986 (codified at TEX. GOV'T CODE ch. 617)).

[149]399 S.W.3d 130, 135 (Tex. 2013).

[150]*Mullinax v. Texarkana Indep. Sch. Dist.*, 2001 WL 422731 at *3 (5th Cir. April 2, 2001) (citing *Corpus Christi Independent School District v. Padilla*,709 S.W.2d 700, 707 (Tex.App.  Corpus Christi 1986, no writ)).

[151]*Id.*; and *Corpus Christi Independent School District v. Padilla*,709 S.W.2d 700, 707 (Tex.App.  Corpus Christi 1986, no writ) (citing TEX.ATT'Y GEN.OP. H-422 (1974) that interpreted  TEX. REV. CIV. STAT. art. 5154c).

**PLAINTIFF'S THIRD AMENDED COMPLAINT – Page 33**

CAINFEDERALAMENDEDCOMPLAINT3.wpd

supervisor, was the appropriate administrator to hear complaints about Collie.[152]  Bohn also decided

to issue the warning, so she is the appropriate person to hear grievances, complaints and/or petitions

over criminal trespass warnings.  Under Aledo ISD policies, Bohn also exercises exclusive authority

to issue and rescind criminal trespass warnings at Aledo ISD[153], while "[the Aledo ISD] Board

encourages students and parents to discuss their concerns with the appropriate teacher, principal, or

other campus administrator who has the authority to address the concerns."[154]

209.    Defendant Bohn is the appropriate administrator to hear trespass warning grievances and she

admitted at deposition that she was the appropriate administrator at Aledo ISD to hear Plaintiff's

grievances.  But Bohn refused to hear Plaintiff's grievances.[155]  Bohn also failed to notify Plaintiff

that she was the person at Aledo ISD with exclusive authority over issuing and rescinding criminal

trespass warnings, because "she didn't see the need to".[156]

210.    After Bohn's subordinate, Lynn McKinney, denied Plaintiff's grievance, the Aledo ISD

Board of Trustees also rejected Plaintiff's request that the trespass warning be rescinded.[157]

211.    Plaintiff seeks injunctive relief, declaratory relief and/or mandamus relief, including the

rescission of the criminal trespass warning issued by Defendants Collie and Bohn, and ratified by

Defendant Aledo ISD, which impedes Plaintiff's fundamental right to petition.

212.    Defendants' actions of refusing to follow the requirements of their own grievance policies

---

[152]Aledo ISD Policy CKE (Local) and Aledo ISD Policy FNG (Local).

[153]Bohn Deposition, P32, L3-9; P230, L4-8; and P230, L19-22.

[154]Aledo ISD policy FNG (Local), P2.

[155]Unsworn Declaration of Susan Bohn; and Bohn Deposition, P238, L6 to P240, L21.

[156]Bohn Deposition, P240, L7-21.

[157]See Unsworn Declaration of Susan Bohn.

**PLAINTIFF'S THIRD AMENDED COMPLAINT – Page 34**

CAINFEDERALAMENDEDCOMPLAINT3.wpd

also serves to deprive Plaintiff of his right to petition guaranteed by the Texas Constitution, Art. I, § 27 and under the FIRST AMENDMENT to the United States Constitution, for which deprivation of rights he now sues and requests that the Court enjoin.

### Declaratory Judgment

213.    Plaintiff re-alleges and incorporates the allegations in paragraphs 8 through 166 above.

214.    Plaintiff shows his request for declaratory relief is made under 28 U.S.C. § 2201, which allows "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such".

215.    Plaintiff also seeks declaratory relief under 28 U.S.C. § 2202, which allows "Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."

216.    Plaintiff's requests for declaratory relief, which seek interpretation of Defendants' policies and practices, that are the functional equivalent of statutes, are made under 28 U.S.C. §§ 2201-2202.

217.    Plaintiff seeks declarations that include the determination that Defendants violated his free speech rights guaranteed by the Texas Constitution and under the FIRST AMENDMENT to the United States Constitution.[158] "[This justiciable issue could be appropriately resolved through a declaratory judgment ... [because] declaratory judgments can be used to clarify constitutional imperatives."[159]

---

[158]*City of Austin v. Democracy Coalition*, No. 03-05-00284-CV (Tex.App  Austin, 2005).

[159]*Id.* (citing *Frasier v. Yanes,* 9 S.W.3d 422, 427 (Tex. App.  Austin 1999, no pet.); and *Hays County v. Hays County Water Planning P'ship,* 106 S.W.3d 349, 359 (Tex. App.  Austin 2003, no pet.) (party may bring declaratory judgment action to determine whether commissioners

**PLAINTIFF'S THIRD AMENDED COMPLAINT – Page 35**

CAINFEDERALAMENDEDCOMPLAINT3.wpd

218.    The Austin Court of Appeals held in *City of Austin v. Democracy Coalition* that a party harmed by a Texas government may sue under the TEXAS DECLARATORY JUDGMENT ACT to obtain relief from a government's unconstitutional action.[160]

219.    The *Democracy Coalition* decision is consistent with *Jones v. Memorial Hosp. System*, where the court said "[we] accordingly hold that article 1, section 8 of the Texas Constitution constitutes an independent legal basis for a cause of action claiming an infringement of the right of free speech guaranteed by that section of the state constitution."[161]

220.    Cain seeks equitable relief and his claims in equity, including claims for injunctive relief, declaratory relief and mandamus relief, are allowed under Texas law and are therefore also appropriate under federal law, including 42 U.S.C. § 1983.[162]

221.    Texas school districts are not exempt from this conclusion.  Fifty (50) years ago, the Texas Supreme Court recognized in *Passel v. Fort Worth Independent School District*, that students harmed by the illegal application of a school district rule to implement a penal statute could sue to enjoin enforcement of the rule.[163]

222.    Cain seeks to enjoin enforcement of an illegal criminal trespass warning, a school district "rule" requiring him to stay off Aledo ISD campuses and to stay away from Aledo ISD events.  This rule enforcing TEXAS PENAL CODE § 30.05 interferes with and punishes his exercise of his free

---

court acted outside of its constitutional and statutory authority)).

[160]*Id.*

[161]746 S.W.2d 891, 893-94 (Tex.App.  Houston [1st Dist.], 1988).

[162]*Democracy Coalition v. City of Austin*, 141 S.W.3d 282 (Tex.App.  Austin, 2004) (citing *City of Beaumont v. Bouillion*, 896 S.W.2d 143 (Tex. 1995)).

[163]440 S.W.2d 61, 64 (Tex. 1969).

**PLAINTIFF'S THIRD AMENDED COMPLAINT – Page 36**

speech rights.  Defendants issued the trespass warning to disapprove of Plaintiff's speech on social media.  Defendants have no authority to regulate speech, nor to punish Plaintiff for speech.

223.    Twenty five years after *Passel*, the Texas Supreme Court again explained when it is proper for civil courts to provide equitable relief from enforcement of a "criminal statute".[164]  The *Morales* court expressly recognized a government's unconstitutional interference with "personal as well as property rights" may warrant injunctive relief.  The *Morales* court said if there is no actual or threatened enforcement of a criminal statute and the party does not seek an injunction against its enforcement, but the statute is nonetheless integrally related to conduct subject to the court's equity jurisdiction, a Plaintiff make seek declaratory relief.[165]  Plaintiff likely will not be prosecuted for an offense, so an injunction is Plaintiff's avenue to protect his personal rights and property rights.[166]

224.    Complaints about the illegality of criminal trespass warnings, and complaints about the policies implemented by governments for issuing criminal trespass warnings are properly decided by civil courts in Texas.[167]  In *Wilson v. State*, the Beaumont Court of Appeals determined that a person complaining about a public employee's decision to ban the citizen from "the Community Center is a civil matter".[168]  The court said as follows:

> **Wilson could have pursued his complaints about Douglas's decision to ban him from the Community Center in one of the regular meetings of Dayton City Council. ... Or, if he could prove that Douglas's decision banning him from the Community Center was either irrational or arbitrary, *Wilson could have sought***

---

[164]*State of Texas v. Morales*, 869 S.W.2d 941 (Tex. 1994)

[165]*Id.*

[166]*Id.* at 945-46.

[167]*Wilson v. State*, 504 S.W.3d 337, 345 (Tex.App.  Beaumont 2016)

[168]*Id.*

**PLAINTIFF'S THIRD AMENDED COMPLAINT – Page 37**

CAINFEDERALAMENDEDCOMPLAINT3.wpd

___*to enjoin the City from enforcing Douglas's decision*__.[169]

The *Wilson* court also noted the following:

> ***Frazier v. Garrison I.S.D***__.__**, 980 F.2d 1514, 1528 (5th Cir. 1993) (stating that a violation of a person's right to substantive due process 'may require courts to void certain types of government action');**
>
> ***City of Elsa v. M.A.L***__.__**, 226 S.W.3d 390, 392 (Tex. 2007) (noting that suits seeking equitable relief for violations of an individual's constitutional rights are not prohibited); and**
>
> ***City of San Antonio v. TPLP Office Park Props***__.__** , 218 S.W.3d 60, 64–65 (Tex. 2007) (discussing requirement under substantive due process that City's exercise of the police power cannot be arbitrary and unreasonable).**

225.    As the violation of a person's right to substantive due process 'may require courts to void certain types of government action'; as suits seeking equitable relief for violations of an individual's constitutional rights are not prohibited; and as substantive due process prohibits the government's exercise of its police power in an arbitrary and unreasonable manner, pursuant to 28 U.S.C. §§ 2201-2202, Plaintiff respectfully seeks the following declarations:

A.    the Aledo ISD unwritten policy on criminal trespass warnings is impermissibly vague and unconstitutional as it fails to provide Plaintiff, and others similarly situated, notice of any standards for the issuance of trespass warnings by Aledo ISD;  it fails to provide Plaintiff and others notice of any standards for the rescission of trespass warnings by Aledo ISD; and the unwritten policy illegally vests unfettered discretion in the hands of Defendant Bohn without any adequate standards, requirements or guidance as to the exercise of that unfettered authority, which renders the policy unconstitutionally vague and overbroad;

B.    the Aledo ISD unwritten and/or written policy on the hearing of grievances is impermissibly vague and unconstitutional, or it is merely illegal, as it acts to deprive Plaintiff, and others similarly situated, their right to petition for redress of grievances, it lacks any notice of any standards for the delegation of grievance hearings by the appropriate administrator; and the policy illegally vests unfettered discretion in the hands of Defendant Bohn without any adequate standards, requirements, or guidance

---

[169]*Id.*

**PLAINTIFF'S THIRD AMENDED COMPLAINT – Page 38**

as to the exercise of that unfettered authority, which renders the policy unconstitutionally vague and overbroad, as it routinely allows Defendant Bohn to deny individuals their right to be heard by the appropriate administrator;

C.     the criminal trespass warning issued by Defendant Collie and Defendant Bohn to Plaintiff was issued without cause, without notice or hearing, without due course of law, it improperly infringes upon Plaintiff's property rights and liberty interests and is illegal and void;

D.     the criminal trespass warning issued by Defendant Collie and Defendant Bohn to Plaintiff was issued improperly in retaliation for Plaintiff's exercise of his free speech rights, it acts to deprive Plaintiff of his equal rights under law and is illegal and void;

E.     the criminal trespass warning issued by Defendant Collie and Defendant Bohn to Plaintiff was issued improperly in retaliation for Plaintiff's criticism of Aledo ISD and violates TEXAS GOVERNMENT CODE § 551.007(e), as "a governmental body may not prohibit public criticism of the governmental body, including criticism of any act, omission, policy, procedure, program, or service" and is therefore illegal and void;

F.     the criminal trespass warning issued by Defendant Collie and Defendant Bohn to Plaintiff impermissibly infringes upon Plaintiff's right to petition as it prohibits Plaintiff's attendance at Aledo ISD Board meetings, which is the very forum that would allow Plaintiff an opportunity to petition and/or appeal the criminal trespass warning and it is illegal and void;

G.     that Plaintiff's exclusion from public areas at Aledo ISD, including roadways and football fields where his son plays for the school football team, impermissibly infringes upon Plaintiff's right enjoy public spaces and that exclusion is therefore illegal and void;

H.     that Plaintiff's exclusion from participation in the educational activities of his son and his exclusion from the exercise of his parental right to make education decisions for his son and/or to communicate with educators and administrators about his son's education is illegal and void; and

I.     that the criminal trespass warning issued to Plaintiff should be rescinded.

### Injunctive Relief, Temporary Restraining Order and Temporary Injunction

226.   Plaintiff re-alleges and incorporates the allegations in paragraphs 8 through 166 above.

227.   Plaintiff satisfies the requirements under Texas law to obtain injunctive relief because he has

**PLAINTIFF'S THIRD AMENDED COMPLAINT – Page 39**

CAINFEDERALAMENDEDCOMPLAINT3.wpd

causes of action against Defendants; he can demonstrate a probable right to recover; he can show probable, imminent, and irreparable harm; and he has no adequate remedy at law.

228.    Plaintiff is entitled to the equitable and injunctive relief sought, as all or part of the relief requires the restraint of some act prejudicial to the Plaintiff.

229.    Defendants are taking action presently in violation of the rights of Plaintiff, which cause harms inflicted upon Plaintiff by Defendants that are irreparable harms.

230.    Plaintiff's injuries and damages are "irreparable" as they "cannot be adequately compensated in damages" or they "cannot be measured by any certain pecuniary standard."[170]

231.    In particular, and as noted in the email from counsel submitted as part of the Affidavit of William J. Dunleavy, Defendants give no consideration to expedite any grievance process, as they fail to understand and/or they simply disregard the irreparable harms inflicted on Plaintiff.

232.    Based on Defendant's policy, FNG (Local), and the refusal of the Aledo ISD Board of Trustees to remedy this illegal situation, it is clear no resolution of the criminal trespass warning will likely be obtained through the grievance process, which is why Plaintiff seeks equitable relief.

233.    Plaintiff is entitled to a writ of injunction under the principles of equity and under the laws of the State of Texas relating to injunctions.

234.    Plaintiff will satisfy the requirements to obtain issuance of all necessary writs and orders.

### **Mandamus Relief**

235.    Plaintiff re-alleges and incorporates the allegations in paragraphs 8 through 166 above.

236.    As noted above, Plaintiff appealed the illegal criminal trespass warning issued by Defendants, through the Aledo ISD grievance processe, but his grievances were denied.

---

[170]*Butnaru v. Ford Motor Co.*, 84 S.W.3d 198 (Tex. 2002).

**PLAINTIFF'S THIRD AMENDED COMPLAINT – Page 40**

CAINFEDERALAMENDEDCOMPLAINT3.wpd

237.    Plaintiff seeks mandamus to compel the rescission of the illegal criminal trespass warning issued by Defendants Collie and Bohn, that was ratified by Aledo ISD's Board of Trustees.

238.    Mandamus relief is proper here as the *ultra vires* conduct complained of is governmental inaction   the refusal of Defendants to lift the illegal criminal trespass warning.  The Court may issue a writ of mandamus compelling action to bring the Defendants into conformance with the law.[171] The mandamus relief requested here is to compel a government official to perform an act that is nondiscretionary, when there is no other adequate remedy by law."[172]

239.    "An appeal from an original proceeding for a writ of mandamus initiated in the trial court ... is different from an original proceeding for a writ of mandamus filed in an appellate court.[173]  This proceeding for writ of mandamus, initiated by Plaintiff in the trial court, is a civil action subject to trial and appeal on substantive law issues and the rules of procedure as any other civil suit.[174]

240.    Despite attempts by Plaintiff to obtain correction of the Defendants' illegal conduct complained of, Defendants continue to violate Texas laws and infringe on  Plaintiff's and others' rights, which causes irreparable injury to Plaintiff and others.

## Unconstitutional Statute "As Applied"

241.    At the April 16, 2020 hearing in the 415th District Court on Aledo ISD's Plea to the Jurisdiction, Motions for Summary Judgment and to Defendant Aledo ISD's Plea to the Jurisdiction

---

[171]*Shamrock Psychiatric Clinic, P.A. v. Tex. Dep't of Health & Human Servs.*, 540 S.W. 3d 553 (Tex. 2018); and *Tex. Dep't of Transp. v. Sefzik* , 355 S.W.3d 618, 622 n.2 (Tex. 2011)

[172]*In re Essex Ins. Co.* , 450 S.W.3d 524, 526 (Tex. 2014) (quoting *Walker v. Packer* , 827 S.W.2d 833, 839 (Tex. 1992)

[173]*Anderson v. City of Seven Points*, 806 S.W.2d 791, 792 n1 (Tex. 1991)

[174]*Id.*

**PLAINTIFF'S THIRD AMENDED COMPLAINT – Page 41**

CAINFEDERALAMENDEDCOMPLAINT3.wpd

or, in the Alternative, Motion for Summary Judgment, Defendants argued that the election of remedies provision found in the TEXAS TORT CLAIMS ACT[175] provides immunity from suit to Defendant Fred Collie for all of Plaintiff's claims against Collie, including, apparently, Plaintiff's claims that Defendant Collie violated Plaintiff's statutory rights and his rights under the Texas Constitution.  Collie claims this immunity because Plaintiff, purportedly, asserted claims in this action that "sound in tort".[176]

242.    Plaintiff alleges no tort claims in this action.

243.    Plaintiff only makes claims in equity, for injunctive relief, for declaratory relief and for mandamus relief [as] allowed by Texas Constitution Art. I, § 29, claims under 42 U.S.C. § 1983 for Defendants' violations of his civil rights and a claim under TEX. CIV. PRAC. & REM. CODE § 9.012

244.    If Defendants now argue that TEXAS CIVIL PRACTICE & REMEDIES CODE § 101.106 provides Defendant Collie immunity from suit even for violations of Plaintiff's constitutional rights, which was not clear from Defendants' Original Answer, nor from Defendants' motions and pleas, Plaintiff contends this section of the TEXAS TORT CLAIMS ACT is unconstitutional "as applied" in this case.

245.    The Texas Legislature has no power, nor authority under the Texas Constitution to immunize the illegal acts of government officials that violate the Plaintiff's rights guaranteed by the Texas Constitution, such as Plaintiff's free speech rights; his right to petition; his freedom of association; his substantive and procedural due process rights; and his right to equal protection under law.

246.    If the Court determines the Texas Legislature intended by TEXAS CIVIL PRACTICE & REMEDIES CODE § 101.106 to immunize Defendant Collie's illegal actions that violate Plaintiff's

---

[175]TEXAS CIVIL PRACTICE & REMEDIES CODE § 101.106.

[176]Statement by Defendants' counsel at oral argument on April 16, 2020.

**PLAINTIFF'S THIRD AMENDED COMPLAINT – Page 42**

rights granted by the Texas Constitution, Plaintiff asks the Court to declare Section 101.106 unconstitutional "as applied" in this case.

247.    Similarly, if Defendants also claim that any other statutory immunities, and/or any "common law" immunities act to immunize any Defendant's illegal actions that violate Plaintiff's rights granted by the Texas Constitution, Plaintiff asks the Court to declare any such statutory immunities unconstitutional "as applied" in this case.

248.    Plaintiff makes this claim for declaratory relief as allowed under the TEXAS DECLARATORY JUDGMENT ACT.[177]

### Frivolous Defenses

249.    Plaintiff alleges the defenses raised by Defendant Aledo ISD and Defendant Collie of "exhaustion of administrative remedies" and/or "common law exhaustion of administrative remedies" are made solely for improper purposes of harassment; to needlessly cause him to incur expense; and that Defendants' exhaustion defenses are:

    (1)    groundless and brought in bad faith;

    (2)    groundless and brought for the purpose of harassment; and

    (3)    groundless and interposed for the improper purposes of unnecessary delay and to needlessly impose on Plaintiff the costs of litigation.

250.    Defendants also failed to advise the Court of controlling authority on the exhaustion of administrative remedies, *McIntyre v. El Paso Independent School District*[178], for these impermissible and improper purposes described above and he asks that these defenses be denied.

---

[177]TEX. CIV. PRAC. & REM. CODE § 37.004.

[178]499 S.W.3d 820 (Tex. 2016)

**PLAINTIFF'S THIRD AMENDED COMPLAINT – Page 43**

251.    That Defendants act in bad faith is clear not only from their deliberate failure to advise the Court of controlling authority, but also with Defendants' citation in their pleadings to overruled case current law.   Of the 18 cases cited by Defendant Aledo ISD in its Supplemental Plea to the Jurisdiction, 7 were decided before 1995 and have been overruled by statute.[179]

252.    The Texas Legislature made significant changes to the administrative appeal process in 1995, as noted in *McIntyre*, that "reduced the [Education] Commissioner's authority to hear disputes."[180] The Supreme Court also said the following in *McIntyre*:

> **As one court of appeals explained, before "1995, the commissioner had jurisdiction over appeals not only of persons aggrieved by 'the school laws of Texas,' or trustee actions, but 'any matter of dispute ... arising under the school laws of Texas.'"[181]   "But since 1995, the statute no longer has a 'general appeal clause for persons aggrieved by school board actions.'"[182]**
>
> **No longer is there a 'direct administrative remedy for claims that a school board took action that violated the constitutional rights (either state or federal) of the complaining party, because those are not part of the school laws of the state.'[183] Administrative appeals are only permitted when a person is aggrieved by the school laws, a school board's violation of the school laws, or its violation of a written employment contract. Tex. Educ. Code § 7.057(a). In all other cases, a**

---

[179]Aledo ISD's Supplement to its Plea to the Jurisdiction, P2-4 (citing *Trustees of Crosby Indep. Sch. Dist. v. West Disinfecting Co.*, 121 S.W.2d 661 (Tex. Civ. App.  Dallas 1938); *Roberts v. Hartley Indep. Sch. Dist.,* 877 S.W.2d 506 (Tex. App.  Amarillo 1994, writ denied); *Mitchison v. Houston Indep. Sch. Dist.,* 803 S.W.2d 769 (Tex. App.  Houston [14th Dist.] 1991, writ denied); *Daniel v. Dallas Indep. Sch. Dist.,* 351 S.W.2d 356 (Tex. Civ. App.  El Paso 1961, writ ref'd n.r.e.); *Hinojosa v. San Isidro Indep. Sch. Dist.,* 273 S.W.2d 656 (Tex. Civ. App.  San Antonio 1954, no writ); *State ex. rel. Nevills v. Sanderson*, 88 S.W.2d 1069 (Tex. Civ. App.  Waco 1935, no writ); and *Grounds v. Tolar Indep. Sch. Dist.,* 707 S.W.2d 889 (Tex. 1986).

[180]*McIntyre*, 499 S.W.3d at 825.

[181]*Id.* (citing *Austin Indep. Sch. Dist. v. Lowery*, 212 S.W.3d 827, 832 (Tex.App.  Austin 2006, pet. denied) (describing statutory changes limiting the Commissioner's jurisdiction)).

[182]*Id.* (citing *Jones v. Clarksville Indep. Sch. Dist.,* 46 S.W.3d 467, 474 (Tex.App.  Texarkana 2001, no pet.)

[183]*Id.*

**PLAINTIFF'S THIRD AMENDED COMPLAINT – Page 44**

**person may resort directly to the courts.**[184]

253.    Even when confronted with the clear application in this case of the holding from *McIntrye*, Defendants persist in their assertion of the frivolous exhaustion arguments.

254.    At oral argument on April 16, 2020, Defendants' counsel even claimed that a purported defense of "common law exhaustion" was "in the pleadings".  But the term "common law" only appears in Defendants' pleadings as follows:

> Defendants' Original Answer, P3 (claim for attorney's fees at "common law");
>
> Defendants' Plea to the Jurisdiction, P10 (no "common law" claim for constitutional harms);
>
> Defendant Aledo ISD Motion for Summary Judgment, P14 (no "common law" claims against school          employees; and TTCA only avenue for "common law" recovery);
>
> Defendant Collie Motion for Summary Judgment, P6 (no "common law" claim for constitutional harms);

Defendants never mention the term "common law" in the Supplemental Plea filed by Aledo ISD on March 26, 2020.   Defendants also never mention the term "common law exhaustion of administrative remedies" in any of their pleadings, nor did they use the term "common law" in connection with their exhaustion of administrative remedies arguments.

255.    Plaintiff also shows the Court that term searches on April 16, 2020 for the following terms: 1) "common law exhaustion of administrative remedies"; and 2) "common law exhaustion" and "administrative remedies", did not turn up any Texas case using the term in example 1, nor any case using the two terms in example 2 in combination from 1925 to April 16, 2020.

256.    Plaintiff shows the purported defense "common law exhaustion of administrative remedies"

---

[184] *Id.*

**PLAINTIFF'S THIRD AMENDED COMPLAINT – Page 45**

does not exist in Texas, nor have Defendants raised this purported defense by their pleadings, and they have not argued, nor have they pleaded that a good faith extension of any existing Texas law supports their made up defense of "common law exhaustion of administrative remedies".

257.    Plaintiff requests, under TEX. CIV. PRAC. & REM. CODE § 9.012, an award of his expenses, attorney's fees and costs incurred in responding to this frivolous defense by Defendants.

## Damages

258.    Plaintiff's professional reputation has been and will continue to be irreparably harmed by Defendants' illegal conduct, if the criminal trespass warning is not rescinded, which damages are not subject to calculation.

259.    Plaintiff seeks his economic damages and damages for the mental anguish and emotional distress he has suffered due to Defendants' illegal conduct.

260.    Plaintiff shows he has suffered and will continue to suffer irreparable harm from the interference by Defendants with his ability to participate in his son's education..

261.    Plaintiff is entitled to injunctive relief to stop the irreparable harm he has been and will continue to suffer.

## Attorney's Fees

262.    Plaintiff seeks his reasonable attorney's fees allowed under TEX. CIV. PRAC. & REM. CODE § 9.012; under 42 U.S.C. § 1983 and in accordance with *Utica Lloyd's of Texas v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998), because "a party may recover fees in a federal declaratory judgment action where 'controlling substantive law' permits such recovery"; and under any other applicable law.

## Pre-Judgment and Post-Judgment Interest

263.    Stricklin claims pre-judgment and post-judgment interest in accordance with TEX. FIN. CODE

**PLAINTIFF'S THIRD AMENDED COMPLAINT – Page 46**

CAINFEDERALAMENDEDCOMPLAINT3.wpd

§ 304.001 and any other applicable law.

## Jury Demand

264.    Plaintiff requests a jury trial in this case.


WHEREFORE, Plaintiff Charles "Chad" Cain, III, respectfully prays that after a jury trial,

he have against Defendant Aledo Independent School District, against Defendant Fred Collie, and

against Defendant Susan Bohn all of his requested declaratory relief, mandamus relief and injunctive

relief; his damages; his reasonable attorney's fees; court costs; pre-judgment and post judgment

interest; and such other and further relief to which Plaintiff may show himself to be justly entitled.

Respectfully submitted,

LAW OFFICES OF WILLIAM J. DUNLEAVY

/s/ *William J. Dunleavy*
William J. Dunleavy
State Bar No. 00787404
825 Watters Creek Boulevard
Building M, Suite 250
Allen, Texas 75013
Telephone No. 972/247-9200
Facsimile No. 972/247-9201
Email: bill@williamjdunleavy.com

ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF FILING AND SERVICE

I certify on May 7, 2020, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court Northern District of Texas, using the electronic case filing system of the court. The electronic filing system sent a "Notice of Electronic Filing" to attorneys of record, including Defendants' counsel, Bridget Robinson, at <brobinson@wabsa.com> who have consented to accept this notice as service of this pleading by electronic means.

s/ *William J. Dunleavy*
William J. Dunleavy

**PLAINTIFF'S THIRD AMENDED COMPLAINT – Page 47**

CAINFEDERALAMENDEDCOMPLAINT3.wpd

**EXHIBIT A**

CAUSE NO. _____

| | | |
|---|---|---|
| CHARLES "CHAD" CAIN, III, | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | PARKER COUNTY, TEXAS |
| | § | |
| ALEDO INDEPENDENT SCHOOL DISTRICT and FRED COLLIE, | § | |
| | § | |
| Defendants. | § | ____ JUDICIAL DISTRICT |

## AFFIDAVIT OF CHARLES "CHAD" CAIN, III

BEFORE ME, the undersigned authority, on this date, personally appeared Charles "Chad" Cain, III, who identified himself to me by his Texas Drivers License and who on oath states the following is based on his personal knowledge and is true and correct.

"1.     My name is Charles "Chad" Cain.  I am over twenty-one (21) years of age; I am qualified to make this affidavit; and I testify based on my personal knowledge of the facts stated herein.

2.     I am the Plaintiff in this lawsuit, complaining of the criminal trespass warning issued to me by Aledo Independent School District (Aledo ISD) Police Chief Fred Collie.

3.     I am the father of a child who attends school at Aledo ISD

4.     On September 10, 2019, I received a call from an employee of Defendant Aledo ISD who advised that my son had been assaulted at school by another student.

5.     I later learned my son was hit so hard, he was knocked unconscious and he suffered a concussion from the assault.

6.     I also learned the perpetrator of the assault is the son of an Aledo ISD teacher.

7.     In my discussions with the school principal, Mandy Musselwhite, who is also an employee

**AFFIDAVIT OF CHARLES "CHAD" CAIN, III – Page 1**

CAINAFFIDAVITCAIN.wpd

of Defendant Aledo ISD, I was told the student who assaulted my son was likely to receive an in-school suspension.

8.      On September 11, 2019, I spoke with the school's assistant principal, Michael Diaz, an Aledo ISD employee, who advised that the perpetrator of the assault on my son was punished, but Diaz believed the punishment "was too harsh" in Diaz's opinion.

9.      On September 12, 2019, I received statements about the assault from assistant principal Diaz, including a statement from the perpetrator who admitted to assaulting my son, who the perpetrator claimed was "annoying" the perpetrator by making loud noises.

10.     On September 13, 2019, I learned the perpetrator of the assault was participating with the football team while he was still suspended.

11.     On September 16, 2019, assistant principal Diaz told me in a meeting that the problem of my son's assault "was getting taken care of", but Diaz "couldn't talk about punishment."

12.     When I asked Diaz how the classroom teacher failed to stop the assault or even observe the assault, Diaz explained that the teacher was helping another student.

13.     When I asked Diaz how the classroom teacher failed to hear or observe the loud noises my son was accused of making by the perpetrator, Diaz said it was "a loud classroom and half the kids didn't want to be in the class because they didn't want to be in school."

14.     Diaz told me how to file a complaint with the Aledo ISD police department.

15.     On September 16, 2019, I met with Aledo ISD police officer Cummins and attempted to file assault charges, which Cummins did not initially seem to believe should be allowed, as Cummins advised that he would need to check with the police chief, Defendant Collie, to "make sure they had a good offense."  He also told me he would get back with me.

**AFFIDAVIT OF CHARLES "CHAD" CAIN, III – Page 2**

CAINAFFIDAVITCAIN.wpd

16.    On September 17, 2019, I filed a "Bully Report" under Aledo ISD internal policies and procedures.

17.    On September 18, 2019, I spoke to school principal Musselwhite to ask why the perpetrator was participating with the football team while suspended and Musselwhite said "the athletic department was completely different from the school and gave their own punishment."

18.    When I told Musselwhite I wanted to appeal the school's punishment for the perpetrator, she advised me of the appeal procedures, she sent me an email, and she sent a copy of the email to Aledo ISD athletic director, Steve Wood.

19.    On September 19, 2019, by email, the perpetrator's football coach, Joe Roquemore, an employee of Aledo ISD, advised he would not or could not discuss punishment with me.

20.    That same day, police officer Cummins gave me a case number for the assault.

21.    On September 20, 2019, I spoke with the Aledo ISD athletic director, Steve Wood, to request additional punishment for the perpetrator, but Wood told me he was "sorry to hear what happened" and "life wasn't always fair".

22.    Wood told me he would ask the perpetrator's family if they would agree to additional punishment if I would drop his request that assault charges be filed.

23.    On September 20, 2019, I posted about my disappointment and frustration with Aledo ISD's handling of the assault of my son and the inadequate punishment for the perpetrator.

24.    I received many supportive responses, reactions and comments about my social media posts, including information that the perpetrator was previously sent to an alternative school for bullying another student; that the perpetrator was present at a football game while suspended from school; and that the perpetrator's mother was employed by Defendant Aledo ISD.

**AFFIDAVIT OF CHARLES "CHAD" CAIN, III – Page 3**

CAINAFFIDAVITCAIN.wpd

25.     On September 22, 2019, I again posted on social media, expressing my frustration and asking if punishment would have been the same if it were not a teacher's child who committed the assault.

26.     On September 23, 2019, I was present at my son's school to appeal the perpetrator's punishment and to ask about Aledo ISD's victim assistance program, but the receptionist did not know about any victim's assistance.

27.     When the receptionist called the principal, Musselwhite, to the office, Aledo ISD Police Chief, Defendant Collie, also came to the office.

28.     Defendant Collie asked me if we could speak privately, "cop to cop", as I am employed by the City of Fort Worth Police Department.

29.     Collie took me to a different office, where he demanded that I stay off social media, which he repeated to me several times.

30.     Defendant Collie told me "you need to stay off social media, your posts are causing trouble".

31.     Defendant Collie asked me if the Fort Worth Police Department was aware of my social media activity.

32.     I took the comment as I believe Defendant Collie intended – a veiled threat by Collie to interfere with my employment as a police officer with the City of Fort Worth.

33.     After the threats by Defendant Collie, I remained frustrated and disappointed by Aledo ISD's response to the assault on my son and I expressed that frustration and disappointment in additional postings on social media.

34.     After my public expression of frustration and disappointment with Aledo ISD, Defendant Collie issued me a criminal trespass warning on September 24, 2019, which is attached to this Affidavit, without notice, hearing, nor any information on any right to appeal or contest the warning.

**AFFIDAVIT OF CHARLES "CHAD" CAIN, III – Page 4**

CAINAFFIDAVITCAIN.wpd

35.     I believe the trespass warning is illegal retaliation for my protected speech that Defendant Collie disagrees with or is upset by.

36.     Defendant Collie's criminal trespass warning references "Texas Penal Code Section 30.05, 'Criminal Trespass.'" and it acknowledges Collie's threats made against me on September 23, 2019.

37.     Collie described his threats as "you and I discussed the posts that you have made on Facebook recently regarding a student enrolled in Aledo ISD."

38.     Collie also acknowledged in the trespass warning that it was given to me because I did not obey his order and instead, I "engaged in further conduct publicly on social media".

39.     I am now prohibited from being "physically present on any Aledo ISD property or at any Aledo ISD event absent prior written approval by a school or district administrator."

40.     The active trespass warning prohibits me from attending Aledo ISD Board meetings, which are Aledo ISD events.

41.     The active trespass warning prohibits me from driving my son onto school grounds, it prohibits me from participating in my son's school activities and it prohibits me from attending my son's football games, including a game that is scheduled on October 1, 2009.

42.     The locations where I drop my son off for school, where I drop my son off to his football practices and the football field where my son plays games are all public areas.

43.     My exclusion from participating in my son's educational activities has caused me irreparable harm and it will continue to cause me irreparable harm if it is not rescinded.

44.     I am not able to precisely quantify the harm caused by the trespass warning, but I am harmed and my son is humiliated because I am not permitted to drop him off at the school's front door.

45.     There are very few football games each season, including one on October 1, 2019.

**AFFIDAVIT OF CHARLES "CHAD" CAIN, III – Page 5**

CAINAFFIDAVITCAIN.wpd

Further affiant sayeth not."

Charles "Chad" Cain

SUBSCRIBED AND SWORN to before me, a notary public on September 30, 2019.

Notary Public in and for the State of Texas

KELLI NICOLE THOMPSON
Notary Public, State of Texas
Comm. Expires 04 23-2022
Notary ID 13153953-9

AFFIDAVIT OF CHARLES "CHAD" CAIN – Page 6

CAINAFFIDAVITCAIN.wpd



24 September, 2019

Mr. Charles D. (Chad) Cain III
**REDACTED**

The intent of this letter is to serve notice of a Criminal Trespass Warning under Texas Penal Code Section 30.05, "Criminal Trespass."

As you know, on September 23, 2019, you and I discussed the posts that you have made on Facebook recently regarding a student enrolled in Aledo ISD. Since that conversation, you have engaged in further conduct publicly on social media that has caused a significant amount of fear among our parents and staff for the safety of our students, staff, and parents on campus and at district events.

I am writing to inform you that you are no longer authorized to be physically present on any Aledo I.S.D. property or at any Aledo I.S.D. event absent prior written approval by a school or district administrator.



Any meeting that a campus or district administrator schedules with you will be pre-arranged and approved and will be held off-campus and at the Aledo I.S.D. Central Administration building. You may schedule meetings through Aledo Middle School Principal, Mandy Musselwhite, or Aledo I.S.D. Deputy Superintendent, Lynn McKinney.

Sincerely,

Fred D. Collie
Chief of Police
Aledo I.S.D. Police Department
117 Vernon Road
Aledo, TX 76008
Office- (817) 441-5147
Fax- (817) 441-4816
FCollie@AledoISD.Org

**EXHIBIT B**

CAUSE NO. _____

| | | |
|---|---|---|
| CHARLES "CHAD" CAIN, III | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | PARKER COUNTY, TEXAS |
| | § | |
| ALEDO INDEPENDENT SCHOOL | § | |
| DISTRICT and FRED COLLIE, | § | |
| | § | |
| Defendants. | § | _____ JUDICIAL DISTRICT |

## AFFIDAVIT OF WILLIAM J. DUNLEAVY

BEFORE ME, the undersigned authority, on this date, personally appeared William J. Dunleavy, who is personally known to me and who upon his oath states the following is based on his personal knowledge and is true and correct.

"1.    My name is William J. Dunleavy.  I am over the age of twenty-one (21) and I have never been convicted of a felony.  I am qualified in all respects to make this affidavit and I make this affidavit based upon my personal knowledge of the facts stated herein.

2.    I am the attorney hired by Charles "Chad" Cain to pursue his claims against the Defendants.

3.    Prior to filing this lawsuit, I have attempted on behalf of the Plaintiff to resolve the dispute without the need for court intervention, but those efforts have not been successful.

4.    As noted in the email communication from counsel for Defendant Aledo ISD, which is attached to this Affidavit, Defendants acknowledge that the criminal trespass warning issued to Plaintiff without notice or hearing, in the complete absence of due course of law, was due to the Plaintiff's speech.

5.    Defendants' counsel notes the reasons for the trespass warning as: "Mr. Cain's posts on social media [that] were not simply the run of the mill gripes about the District."

**AFFIDAVIT OF WILLIAM J. DUNLEAVY - Page 1**

CAINAFFIDAVITDUNLEAVY.wpd

6.      Defendants also issued the criminal trespass warning because "Mr. Cain repeatedly posted the name of a specific student in Facebook groups which ended up getting him banned/blocked from the group."

7.      Defendants also issued the trespass warning because "When he was blocked from the Aledo community Facebook group, [Mr. Cain] took to posting on the Aledo Class of 2025 Facebook page where he made a comment about school shootings.

8.      Defendants also issued the trespass warning because "That comment, coupled with his behavior at the campus, led to great alarm and distress by other parents, causing disruption to the educational environment."

9.      Defendants also apparently take issue with Plaintiff's lack of speech, stating "Mr. Cain has not apologized or expressed any remorse for his behavior."

10.     Attached to this Affidavit is Aledo ISD Board Policy FNG (Local), which counsel noted as the policy by which a remedy available to Plaintiff, a complaint process, would be administered.

11.     Aledo ISD Board Policy FNG (Local) allows "The appropriate administrator" at level one, "ten days after receipt of the written complaint" to schedule a conference, while the "administrator shall provide the student or parent a written response within ten days following the conference."

12.     An additional ten (10) day period is provided at level two, with another ten (10) day period allowed for a response at level two, while further ten (10 day periods are allowed before hearings may be held by the Aledo ISD School Board.

13.     "Days" are defined as "District business days" under the Policy FNG (Local).

14.     Also attached to this Affidavit is the Aledo ISD Board Calendar listing scheduled board meeting for the 2018- 2019 academic year.

**AFFIDAVIT OF WILLIAM J. DUNLEAVY - Page 2**

CAINAFFIDAVITDUNLEAVY.wpd

Further affiant sayeth not."

_____
William J. Dunleavy

SWORN TO AND SUBSCRIBED TO BEFORE ME on this 2nd day of October 2019.

_____
Notary Public in and for The State of Texas

KEVIN EUGENE HONEYCUTT
Notary ID #126208968
My Commission Expires
September 10, 2022

**AFFIDAVIT OF WILLIAM J. DUNLEAVY -Page 2**

CAINAFFIDAVITDUNLEAVY.wpd

**William Dunleavy**

| | |
|---|---|
| **From:** | Joey Moore <jmoore@wabsa.com> |
| **Sent:** | Tuesday, October 1, 2019 1:05 PM |
| **To:** | William Dunleavy; Bridget Robinson |
| **Cc:** | Barbara Wilks |
| **Subject:** | RE: Aledo ISD/Cain |

Bill,

I appreciate your attempts to resolve this matter without resorting to litigation.  Thank you for sending a copy of the Petition and your client's demands.  I think it would be helpful for us to give you some information about the District's position.  Mr. Cain's posts on social media were not simply the run of the mill gripes about the District.  Mr. Cain repeatedly posted the name of a specific student in Facebook groups which ended up getting him banned/blocked from the group.  When he was blocked from the Aledo community Facebook group, he took to posting on the Aledo Class of 2025 Facebook page where he made a comment about school shootings.  That comment, coupled with his behavior at the campus, led to great alarm and distress by other parents, causing disruption to the educational environment.  Mr. Cain has not apologized or expressed any remorse for his behavior.

We have discussed your proposed resolution with the Superintendent.

1. The District will not agree to allow Mr. Cain to drop off and pick up his child at the front door of the school.  The District does not believe this should cause Mr. Cain or his child distress, as it is common for students to walk across the street to be picked up.  Recently, the District counted over 150 students on the campus who do this.  Moreover, the campus provides the students with assistance in crossing the street.  As such, there is no reason for Mr. Cain or his child to feel singled out by a practice that many students and parents engage in voluntarily.
2. The District will not lift the CT for the football game this evening.  There is no irreparable harm to Mr. Cain because his child did not dress out for practice today due to illness and therefore will not be playing tonight.
3. The District agrees to allow Mr. Cain to attend AISD Board meetings given that Mr. Cain provides notice to the District of when he intends to attend.  Moreover, Mr. Cain may schedule meetings with the campus administration and Assistant Superintendent McKinney.
4. The District will hear your client's grievances and complaints in accordance with Board Policy FNG (Local).


If there is a hearing on your request for a temporary restraining order, the District wants to have an opportunity to be heard.

Joey Moore

---

**From:** William Dunleavy <bill@williamjdunleavy.com>
**Sent:** Tuesday, October 1, 2019 11:16 AM
**To:** Joey Moore <jmoore@wabsa.com>; Bridget Robinson <brobinson@wabsa.com>
**Cc:** Barbara Wilks <bwilks@wabsa.com>
**Subject:** Aledo ISD/Cain

Ms. Moore and Ms. Robinson:

I am heading out for the next 2 hours.  If it is helpful to bridge any potential gaps in our clients' respective positions, I can propose a potential short term solution that would avoid the need for court intervention, as follows:

Aledo ISD agrees the trespass warning does not apply to prohibit Chad Cain from dropping his son off at the front door of the school, at football practices or games, nor does the trespass warning prohibit Mr. Cain from picking up his son from school, football practices and football games.

Aledo ISD also agrees the trespass warning does not apply to prohibit Chad Cain from attending his son's football games.

Aledo ISD also agrees the trespass warning does not apply to prohibit Chad Cain from attending Aledo ISD board meetings and/or any grievance proceedings as he seeks relief from the trespass warning administratively.

Aledo ISD agrees to hear Chad Cain's grievance over the trespass warning administratively at the superintendent level within 10 calendar days.  On this issue, Superintendent Bohn is Chief Collie's direct supervisor, so she is the appropriate level 1 administrator to hear the grievance.

Bill Dunleavy
Law Offices of William J. Dunleavy
825 Watters Creek Boulevard
Building M, Suite 250
Allen, Texas 75013
972/247-9200 Telephone
972/247-9201 Facsimile
bill@williamjdunleavy.com

Aledo ISD
184907

STUDENT RIGHTS AND RESPONSIBILITIES                                   FNG
STUDENT AND PARENT COMPLAINTS/GRIEVANCES                        (LOCAL)

**Complaints**

In this policy, the terms "complaint" and "grievance" shall have the same meaning.

**Other Complaint Processes**

Student or parent complaints shall be filed in accordance with this policy, except as required by the policies listed below. Some of these policies require appeals to be submitted in accordance with FNG after the relevant complaint process:

1. Complaints alleging discrimination or harassment based on race, color, gender, national origin, disability, or religion shall be submitted in accordance with FFH.

2. Complaints concerning dating violence shall be submitted in accordance with FFH.

3. Complaints concerning retaliation related to discrimination and harassment shall be submitted in accordance with FFH.

4. Complaints concerning bullying or retaliation related to bullying shall be submitted in accordance with FFI.

5. Complaints concerning failure to award credit or a final grade on the basis of attendance shall be submitted in accordance with FEC.

6. Complaints concerning expulsion shall be submitted in accordance with FOD and the Student Code of Conduct.

7. Complaints concerning any final decisions of the gifted and talented selection committee regarding selection for or exit from the gifted program shall be submitted in accordance with EHBB.

8. Complaints concerning identification, evaluation, or educational placement of a student with a disability within the scope of Section 504 shall be submitted in accordance with FB and the procedural safeguards handbook.

9. Complaints concerning identification, evaluation, educational placement, or discipline of a student with a disability within the scope of the Individuals with Disabilities Education Act shall be submitted in accordance with EHBAE, FOF, and the procedural safeguards handbook provided to parents of all students referred to special education.

10. Complaints concerning instructional resources shall be submitted in accordance with EF.

11. Complaints concerning a commissioned peace officer who is an employee of the District shall be submitted in accordance with CKE.

Aledo ISD
184907

STUDENT RIGHTS AND RESPONSIBILITIES                                    FNG
STUDENT AND PARENT COMPLAINTS/GRIEVANCES                        (LOCAL)

12.   Complaints concerning intradistrict transfers or campus as-
signment shall be submitted in accordance with FDB.

13.   Complaints concerning admission, placement, or services
provided for a homeless student shall be submitted in accord-
ance with FDC.

Complaints regarding refusal of entry to or ejection from District
property based on Education Code 37.105 shall be filed in accord-
ance with this policy. However, the timelines shall be adjusted as
necessary to permit the complainant to address the Board in per-
son within 90 days of filing the initial complaint, unless the com-
plaint is resolved before the Board considers it. [See GKA(LEGAL)]

**Notice to Students
and Parents**                  The District shall inform students and parents of this policy through
appropriate District publications.

**Guiding Principles**

Informal Process          The Board encourages students and parents to discuss their con-
cerns with the appropriate teacher, principal, or other campus ad-
ministrator who has the authority to address the concerns. Con-
cerns should be expressed as soon as possible to allow early
resolution at the lowest possible administrative level.

Informal resolution shall be encouraged but shall not extend any
deadlines in this policy, except by mutual written consent.

Formal Process           A student or parent may initiate the formal process described be-
low by timely filing a written complaint form.

Even after initiating the formal complaint process, students and
parents are encouraged to seek informal resolution of their con-
cerns. A student or parent whose concerns are resolved may with-
draw a formal complaint at any time.

The process described in this policy shall not be construed to cre-
ate new or additional rights beyond those granted by law or Board
policy, nor to require a full evidentiary hearing or "mini-trial" at any
level.

**Freedom from
Retaliation**                  Neither the Board nor any District employee shall unlawfully retali-
ate against any student or parent for bringing a concern or com-
plaint.

**General Provisions**

Filing                        Complaint forms and appeal notices may be filed by hand-delivery,
by electronic communication, including email and fax, or by U.S.
Mail. Hand-delivered filings shall be timely filed if received by the
appropriate administrator or designee by the close of business on
the deadline. Filings submitted by electronic communication shall
be timely filed if they are received by the close of business on the
deadline, as indicated by the date/time shown on the electronic

Aledo ISD
184907

STUDENT RIGHTS AND RESPONSIBILITIES                                           FNG
STUDENT AND PARENT COMPLAINTS/GRIEVANCES                                (LOCAL)

|  | communication. Mail filings shall be timely filed if they are post-marked by U.S. Mail on or before the deadline and received by the appropriate administrator or designated representative no more than three days after the deadline. |
|---|---|
| Scheduling Conferences | The District shall make reasonable attempts to schedule confer-ences at a mutually agreeable time. If a student or parent fails to appear at a scheduled conference, the District may hold the con-ference and issue a decision in the student's or parent's absence. |
| Response | At Levels One and Two, "response" shall mean a written communi-cation to the student or parent from the appropriate administrator. Responses may be hand-delivered, sent by electronic communica-tion to the student's or parent's email address of record, or sent by U.S. Mail to the student's or parent's mailing address of record. Mailed responses shall be timely if they are postmarked by U.S. Mail on or before the deadline. |
| Days | "Days" shall mean District business days. In calculating timelines under this policy, the day a document is filed is "day zero." The fol-lowing business day is "day one." |
| Representative | "Representative" shall mean any person who or organization that is designated by the student or parent to represent the student or parent in the complaint process. A student may be represented by an adult at any level of the complaint. |
|  | The student or parent may designate a representative through writ-ten notice to the District at any level of this process. If the student or parent designates a representative with fewer than three days' notice to the District before a scheduled conference or hearing, the District may reschedule the conference or hearing to a later date, if desired, in order to include the District's counsel. The District may be represented by counsel at any level of the process. |
| Consolidating Complaints | Complaints arising out of an event or a series of related events shall be addressed in one complaint. A student or parent shall not file separate or serial complaints arising from any event or series of events that have been or could have been addressed in a previous complaint. |
| Untimely Filings | All time limits shall be strictly followed unless modified by mutual written consent. |
|  | If a complaint form or appeal notice is not timely filed, the com-plaint may be dismissed, on written notice to the student or parent, at any point during the complaint process. The student or parent may appeal the dismissal by seeking review in writing within ten days from the date of the written dismissal notice, starting at the |

Aledo ISD
184907

STUDENT RIGHTS AND RESPONSIBILITIES                                    FNG
STUDENT AND PARENT COMPLAINTS/GRIEVANCES                      (LOCAL)

level at which the complaint was dismissed. Such appeal shall be limited to the issue of timeliness.

**Costs Incurred**

Each party shall pay its own costs incurred in the course of the complaint.

**Complaint and Appeal Forms**

Complaints and appeals under this policy shall be submitted in writing on a form provided by the District.

Copies of any documents that support the complaint should be attached to the complaint form. If the student or parent does not have copies of these documents, copies may be presented at the Level One conference. After the Level One conference, no new documents may be submitted by the student or parent unless the student or parent did not know the documents existed before the Level One conference.

A complaint or appeal form that is incomplete in any material aspect may be dismissed but may be refiled with all the required information if the refiling is within the designated time for filing.

**Level One**

Complaint forms must be filed:

1.  Within 15 days of the date the student or parent first knew, or with reasonable diligence should have known, of the decision or action giving rise to the complaint or grievance; and

2.  With the lowest level administrator who has the authority to remedy the alleged problem.

    In most circumstances, students and parents shall file Level One complaints with the campus principal.

    If the only administrator who has authority to remedy the alleged problem is the Superintendent or designee, the complaint may begin at Level Two following the procedure, including deadlines, for filing the complaint form at Level One.

If the complaint is not filed with the appropriate administrator, the receiving administrator must note the date and time the complaint form was received and immediately forward the complaint form to the appropriate administrator.

The appropriate administrator shall investigate as necessary and schedule a conference with the student or parent within ten days after receipt of the written complaint. The administrator may set reasonable time limits for the conference.

Absent extenuating circumstances, the administrator shall provide the student or parent a written response within ten days following the conference. The written response shall set forth the basis of the

Aledo ISD
184907

STUDENT RIGHTS AND RESPONSIBILITIES                                    FNG
STUDENT AND PARENT COMPLAINTS/GRIEVANCES                      (LOCAL)

decision. In reaching a decision, the administrator may consider in-formation provided at the Level One conference and any other rel-evant documents or information the administrator believes will help resolve the complaint.

**Level Two**

If the student or parent did not receive the relief requested at Level One or if the time for a response has expired, the student or parent may request a conference with the Superintendent or designee to appeal the Level One decision.

The appeal notice must be filed in writing, on a form provided by the District, within ten days of the date of the written Level One re-sponse or, if no response was received, within ten days of the Level One response deadline.

After receiving notice of the appeal, the Level One administrator shall prepare and forward a record of the Level One complaint to the Level Two administrator. The student or parent may request a copy of the Level One record.

The Level One record shall include:

1.    The original complaint form and any attachments.

2.    All other documents submitted by the student or parent at Level One.

3.    The written response issued at Level One and any attach-ments.

4.    All other documents relied upon by the Level One administra-tor in reaching the Level One decision.

The Superintendent or designee shall schedule a conference within ten days after the appeal notice is filed. The conference shall be limited to the issues and documents considered at Level One. At the conference, the student or parent may provide information concerning any documents or information relied upon by the ad-ministration for the Level One decision. The Superintendent or de-signee may set reasonable time limits for the conference.

The Superintendent or designee shall provide the student or parent a written response within ten days following the conference. The written response shall set forth the basis of the decision. In reach-ing a decision, the Superintendent or designee may consider the Level One record, information provided at the Level Two confer-ence, and any other relevant documents or information the Super-intendent or designee believes will help resolve the complaint.

Recordings of the Level One and Level Two conferences, if any, shall be maintained with the Level One and Level Two records.

STUDENT RIGHTS AND RESPONSIBILITIES                                         FNG
STUDENT AND PARENT COMPLAINTS/GRIEVANCES                         (LOCAL)

**Level Three**

If the student or parent did not receive the relief requested at Level Two or if the time for a response has expired, the student or parent may appeal the decision to the Board.

The appeal notice must be filed in writing, on a form provided by the District, within ten days of the date of the written Level Two response or, if no response was received, within ten days of the Level Two response deadline.

The Superintendent or designee shall inform the student or parent of the date, time, and place of the Board meeting at which the complaint will be on the agenda for presentation to the Board.

The Superintendent or designee shall provide the Board the record of the Level Two appeal. The student or parent may request a copy of the Level Two record.

The Level Two record shall include:

1.   The Level One record.

2.   The notice of appeal from Level One to Level Two.

3.   The written response issued at Level Two and any attachments.

4.   All other documents relied upon by the administration in reaching the Level Two decision.

The appeal shall be limited to the issues and documents considered at Level Two, except that if at the Level Three hearing the administration intends to rely on evidence not included in the Level Two record, the administration shall provide the student or parent notice of the nature of the evidence at least three days before the hearing.

The District shall determine whether the complaint will be presented in open or closed meeting in accordance with the Texas Open Meetings Act and other applicable law. [See BE]

The presiding officer may set reasonable time limits and guidelines for the presentation, including an opportunity for the student or parent and administration to each make a presentation and provide rebuttal and an opportunity for questioning by the Board. The Board shall hear the complaint and may request that the administration provide an explanation for the decisions at the preceding levels.

In addition to any other record of the Board meeting required by law, the Board shall prepare a separate record of the Level Three presentation. The Level Three presentation, including the presentation by the student or parent or the student's representative, any

STUDENT RIGHTS AND RESPONSIBILITIES                                    FNG
STUDENT AND PARENT COMPLAINTS/GRIEVANCES                          (LOCAL)

presentation from the administration, and questions from the Board with responses, shall be recorded by audio recording, video/audio recording, or court reporter.

The Board shall then consider the complaint. It may give notice of its decision orally or in writing at any time up to and including the next regularly scheduled Board meeting. If the Board does not make a decision regarding the complaint by the end of the next regularly scheduled meeting, the lack of a response by the Board upholds the administrative decision at Level Two.



MENU

ALEDO Independent School District

**A Past to Remember; A Future to Mold**

# AGENDAS & SCHEDULES

* All Aledo ISD Regular Board Meetings start at 6 p.m.

Aledo ISD Board Meeting Agendas Online

School Board Meeting Videos



**2019-2020 Board Meeting Dates**
Aug. 8, 2019 - Special Board Meeting
Aug. 12, 2019 - Board Workshop
Aug. 19, 2019
Aug. 27, 2019 - Special Board Meeting
Sept. 5, 2019 - Board Workshop
Sept. 9, 2019 - Special Board Meeting
Sept. 16, 2019
Oct. 21, 2019
Nov. 18, 2019
Dec. 16, 2019
Jan. 21, 2020
Feb. 17, 2020
Feb. 24, 2020 - Board workshop
March 23, 2020
March 30, 2020 - Special Board Meeting
April 20, 2020
May 18, 2020
June 8, 2020
June 11, 2020 - Board Workshop
July 20, 2020

**2018-2019 Board Meeting Dates**
Aug. 27, 2018 - Special Meeting
Sept. 4, 2018 - Board Workshop - XG Training
Sept. 7, 2018 - Special Meeting



Sept. 17, 2018

☰ **MENU**                                                                            🔍

Oct. 15, 2018
Oct. 17, 2018 - Board Workshop
Oct. 26, 2018 - Special Meeting
Oct. 29, 2018 - Board Workshop - XG Training
Nov. 12, 2018
Dec. 3, 2018 - Board Workshop - XG Training
Dec. 17, 2018
Jan. 8, 2019 - Board Workshop - XG Training
Jan. 22, 2019
Feb. 19, 2019
Feb. 28, 2019 – Board Workshop
March 4, 2019 - Board Workshop - XG Training
March 18, 2019
March 25, 2019 - Special Board Meeting
April 15, 2019
May 9, 2019 - Special Board Meeting
May 21, 2019
June 5, 2019 - Special Board Meeting
June 12, 2019 - Board Workshop
June 17, 2019
July 15, 2019
July 17, 2019 - Special Meeting (at Aledo Community Center) 6:30 p.m.

**2017-2018 Board Meeting Dates**
Jan. 4 - 2018 - Special
Jan. 16, 2018 - Special
Jan. 25, 2018 - Rescheduled from Jan. 22
Feb. 20, 2018
March 7, 2018 - Special
March 19, 2018
March 21, 2018 - Special
March 27, 2018 - Special
March 28, 2018 - Special
April 2, 2018 - Special
April 4, 2018 - Special
April 5, 2018 - Special
April 17, 2018
April 27, 2018 - Special
May 15, 2018 - Special
May 21, 2018 - Special
May 21, 2018
June 1, 2018 - Special
June 18, 2018
July 2, 2018 - Special
July 16, 2018
July 30, 2018 - Special
Aug. 10, 2018 - Special
Aug. 13, 2018 - Workshop
Aug. 20, 2018

⌃  TOP        

 MENU 

       

1008 Bailey Ranch RoadAledo , TX 76008     VIEW MAP 

*p:* 817-441-8327      *f:* 817-441-5144

CONTACT US  |  NEWSLETTER  |  WEBSITE FEEDBACK

Aledo Independent School District

Questions or Feedback?  •  Terms of Use  •  Blackboard Web Community Manager Privacy Policy (Updated)
*Copyright © 2002-2019 Blackboard, Inc. All rights reserved.*

    TOP

