## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| CHARLES "CHAD" CAIN, III, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:20-cv-00442-O |
| | § | |
| ALEDO INDEPENDENT SCHOOL | § | |
| DISTRICT et al., | § | |
| | § | |
| Defendants. | § | |

## <u>ORDER</u>

Before the Court are Defendants Susan Bohn and Fred Collie's Motion to Dismiss and Brief/Memorandum in Support (ECF No. 21–22), filed July 1, 2020; Plaintiff Charles "Chad" Cain, III's Response Opposing Defendants' Motion to Dismiss and Brief/Memorandum in Support (ECF No. 23–24), filed July 8, 2020; and Defendants' Reply and Brief/Memorandum in Support (ECF No. 27–28), filed July 14, 2020. Having considered the motion, briefing, and applicable law, the Court finds that Defendants' Motion should be and is hereby **GRANTED**.

## I.    FACTUAL BACKGROUND[1]

Plaintiff Charles "Chad" Cain, III ("Cain") is the father of a student attending Aledo Middle School in the Aledo Independent School District ("Aledo ISD") under Defendant Superintendent Susan Bohn's ("Bohn") supervision. On September 10, 2019, an Aledo ISD representative called Cain to tell him that his son had been assaulted by another student, rendering his son unconscious and concussed. According to Aledo ISD, the other student was punished with an in-school

---

[1] This summary of facts is taken from the Third Amended Complaint and incorporated documentation. *See* Pl.'s Am. Compl., ECF No. 6. At the 12(b)(6) stage, these facts are taken as true and viewed in the light most favorable to the plaintiffs. *Cf. Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 n.1 (2002) ("Because we review here a decision granting respondent's motion to dismiss, we must accept as true all of the factual allegations contained in the complaint.").

suspension. Feeling the punishment was insufficient, Cain attempted to appeal to Bohn and other school administrators and to file assault charges with Defendant Aledo ISD Police Chief Fred Collie ("Collie") and Aledo ISD police officer Wes Cummins. Cain confirmed the concussion, formally filed the assault charge with Officer Cummins, and filed a "Bully Report" with Aledo ISD. The student admitted to assaulting Cain's son during an interview with Officer Cummins. Meanwhile, Cain grew frustrated when he learned that the student continued participating in football practice during his suspension. Aledo Middle School Principal Mandy Musselwhite informed Cain that "the athletic department was completely different from the school and gave their own punishment[,]" but the nature of the punishment remained unclear to Cain. Cain complained to Aledo ISD Athletic Director Steve Wood, who rejected Cain's request to suspend the punished student from football practices and stated "life wasn't always fair[.]"

That same day, Cain posted on his Facebook page an expression of his frustration with Aledo ISD. Two days later, he posted a video that named the student and displayed images of other students. The punished student's mother, an Aledo ISD employee, complained to Collie about Cain's Facebook posts, specifically citing Cain's use of the student's full name and the over 400 corresponding comments that resulted. The next day, Cain visited the school to appeal the punishment once again, and in a brief meeting he recorded, Collie, among other comments, asked Cain to stay off Facebook and to avoid interacting with another parent on it. Cain, still disappointed in the ultimate outcome, returned to Facebook that day and posted to a group entitled "Aledo Daily Gripes" the following:

> Hi Aledo! I would like for y'all to think about something. The census [sic] is that most, if not all mass school shootings were caused from bullying. If this were true and society is getting worse, will it happen here in Aledo if this school administration keeps bullying the parents by pulling out the broom for the bullys [sic]? Think about that parents!!.

The next day and just two weeks after the in-class assault, Cain met with Collie and Bohn, and Collie issued a criminal trespass warning to Cain under Section 30.05 of the Texas Penal Code, at the direction of Bohn. The criminal trespassing warning stated

> As you know, on September 23, 2019, you and I discussed the posts that you have made on Facebook recently regarding a student enrolled in Aledo ISD. Since that conversation, you have engaged in further conduct publicly on social media that has caused a significant amount of fear among our parents and staff for the safety of our students, staff, and parents on campus and at district events.
>
> I am writing to inform you that you are no longer authorized to be physically present on any Aledo I.S.D. property or at any Aledo I.S.D. event absent prior written approval by a school or district administrator.
>
> Any meeting that a campus or district administrator schedules with you will be pre-arranged and approved and will be held off-campus and at the Aledo I.S.D. Central Administration building. You may schedule meetings through Aledo Middle School Principal, Mandy Musselwhite, or Aledo I.S.D. Deputy Superintendent, Lynn McKinney.

On September 30, 2019, Cain challenged the warning by filing a grievance under Aledo ISD policy and, through his lawyer, threatened to sue if Collie did not rescind the criminal trespass warning. Bohn refused to hear Cain's grievances or to talk to Cain about the warning when Cain appeared before the Aledo ISD Board of Trustees. Instead, Deputy Superintendent Lynn McKinney heard Cain's grievances, and the Aledo ISD Board of Trustees denied Cain's request that they lift or rescind the warning. In the following months, Aledo ISD representatives clarified that the trespass warning bars Cain from driving his son onto school grounds and from participating in his son's school activities. Cain has since been excluded from his son's football games and on-campus, non-school-sponsored baseball practices.

Plaintiff Cain now seeks monetary damages, attorneys' fees, injunctive relief, declaratory relief, and mandamus relief for the criminal trespass warning to the extent available under § 1983. Cain alleges civil rights violations under 42 U.S.C. § 1983, specifically alleging violation of (1)

his procedural due process rights, (2) his substantive due process rights, (3) his right to equal protection under the law, (4) his free speech rights, (5) his right to freely associate and assemble, and (6) his right to petition. Defendants Collie and Bohn now seek dismissal of all claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and based on qualified immunity and official and statutory immunity under Section 22.0511 of the Texas Education Code. Defs.' Mot. Br. at 1–2, ECF No. 22.[2]

## II.   LEGAL STANDARD

### A.  Motion to Dismiss for Failure to State a Claim

Federal Rule of Civil Procedure 8(a) requires a claim for relief to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 does not require detailed factual allegations, but "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). If a plaintiff fails to satisfy Rule 8(a), the defendant may file a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief may be granted."

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a

---

[2] The Court rejects Cain's misplaced assertion that "Defendants' motion is untimely[.]"

defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court may not accept legal conclusions as true, and only a complaint that states a plausible claim for relief will survive a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When well-pleaded factual allegations are present, the Court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

"Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (citations omitted); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). A court may also consider documents that a defendant attaches to a motion to dismiss if plaintiff's complaint refers to them and they are central to the plaintiff's claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).

## B.  Section 1983 Claims and Qualified Immunity

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994) (quoting *Main v. Thiboutot*, 448 U.S. 1, 4 (1980)). It "afford[s] redress for violations of federal statutes, as well as of constitutional norms." *Id.* To state a claim under § 1983, a plaintiff must allege facts that show: (1) Plaintiff has been deprived of a right secured by the Constitution and the laws of the United States; and (2) the deprivation occurred under color of state law. *See Flagg Bros. v. Brooks*, 436 U.S. 149 (1978);

*Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

In their individual capacity, Government officials "are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (internal quotation marks omitted). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law" from claims of monetary damages. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Qualified immunity … is a defense to monetary damages and 'do[es] not extend to suits for injunctive relief under 42 U.S.C. § 1983.'" *Robinson v. Hunt Cty.*, 921 F.3d 440, 452 (5th Cir. 2019), *reh'g denied* (May 16, 2019) (quoting *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1051 n.1 (5th Cir. 1997)). The issue should be resolved at the earliest possible stage of litigation because "[the doctrine] balances two important interests— the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236.

Under *Pearson*, courts are now "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." 555 U.S. at 236. "If the court determines that the right asserted by the plaintiff was not clearly established, it need not reach the more difficult constitutional question." *Longoria ex rel. M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 264 (5th Cir. 2019) (citing *Camreta v. Greene*, 563 U.S. 692, 707 (2011)).

6

The plaintiff has the burden to point out clearly established law. *Clarkston v. White*, 943 F.3d 988, 993 (5th Cir. 2019), *cert. denied*, 206 L. Ed. 2d 937 (May 18, 2020) (citing *Delaughter v. Woodall*, 909 F.3d 130, 139–40 (5th Cir. 2018)). "Clearly established law is determined by controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Id.* (internal quotation marks omitted). "This means the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right, although it is not necessary for controlling precedent to have held that the official's exact act was unlawful." *Id.* (internal quotation marks omitted). "The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Wesby*, 138 S. Ct. at 590. In order to qualify as "clearly established," the law in question should not be defined at a "high level of generality" but instead should be "particularized to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017). Ultimately, "[t]he central concern is whether the official has fair warning that his conduct violates a constitutional right." *Clarkston*, 943 F.3d at 993.

## C.  Injunctive Relief

To obtain injunctive relief, a plaintiff "is required to plead and prove, *inter alia*, 'a substantial likelihood of success on the merits.'" *Jackson v. Fed. Home Loan Mortg. Corp.*, No. 4:11-CV-507-A, 2011 WL 3874860, at *3 (N.D. Tex. Sept. 1, 2011) (quoting *DSC Commc'ns Corp. v. DGI Techs., Inc.*, 81 F.3d 597, 600 (5th Cir. 1996)). If the plaintiff's substantive claims are subject to dismissal on the merits, they cannot establish a likelihood of success on the merits, so injunctive relief is also not available. *See Mitchem v. Mortg. Elec. Registration Servs., Inc.*, No. 3:12-CV-1762-M(BH), 2013 WL 3870038, at *11 (N.D. Tex. July 26, 2013).

### III.    ANALYSIS

#### A.  Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)

##### 1.  Procedural Due Process

"To bring a procedural due process claim under § 1983, a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest." *Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001). First, Cain alleges that he has "a property right and constitutionally protected liberty interest that permits him to go to or remain in public places, for lawful purposes, including the public areas of Aledo ISD property for the lawful purpose of participating in his son's educational activities, for observing his son's football games, for attending his son's baseball practices and for other legal activities[.]"[3] Pl.'s Am. Compl. ¶¶ 176–77, ECF No. 6. Cain denotes two cases to support the existence of that right: *Anthony v. State*, 209 S.W.3d 296, 304 (Tex. App.—Texarkana 2006, no pet.) (recognizing a member of the public's non-fundamental liberty interest in being in a public park) and *Vincent v. City of Sulphur*, 805 F.3d 543, 551 (5th Cir. 2015) (finding no clearly established right to notice and a hearing before issuance of a no-trespass warning under the circumstances). *Id.* ¶ 176. Although courts have recognized a liberty interest in accessing public areas, no procedural due process right entitles Cain "to drop his son off at the front door of the school[,] … to attend his son's football games[, and] … to freely attend school functions and board meetings." Pl.'s Resp. Br. 19–20, ECF No. 24. Neither *Anthony* nor *Vincent* nor the swath of due process cases discussing parental rights support the alleged liberty interest. Cain failed to allege a sufficient liberty or property interest.

---

[3] Defendants argue, and Cain agrees, that Cain has no due process property or liberty right to access school property unfettered. Defs.' Mot. Br. at 8, ECF No. 22. Plaintiff argues that the pleading is more particularized to a right "to drop his son off at the front door of the school[,] . . . to attend his son's football games[, and] . . . to freely attend school functions and board meetings." Pl.'s Resp. Br. at 19–20, ECF No. 24.

Even if Plaintiff had alleged a sufficient liberty or property interest, his procedural due process claim would fail because he alleged that he received adequate process. Notice and an opportunity to be heard in a meaningful way and at a meaningful time are the two fundamental requirements of due process. *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971). "[W]here a State must act quickly, or where it would be impractical to provide predeprivation process, postdeprivation process satisfies the requirements of the Due Process Clause." *Gilbert v. Homar*, 520 U.S. 924, 930 (1997). Cain was given two informal but in-person hearings, first before Lynn McKinney and again before the Aledo ISD Board of Trustees. At both levels his grievance was heard and denied.

Accordingly, even accepting all well-pleaded facts in the complaint as true and viewing them in the light most favorable to the Plaintiff, the facts alleged do not plausibly give rise to an entitlement to relief under procedural due process. Cain's putative claim for relief based on a potential procedural due process violation fails as a matter of law. Because Cain has failed to plead a plausible due process liberty or property interest, he may not seek injunctive relief under this claim, and the Court need not address inquiries into the deprivation of that interest or into the qualified immunity defense.

### 2. Substantive Due Process

To establish a violation of the Fourteenth Amendment's substantive due process guarantee, a plaintiff must prove that (1) he was deprived of a fundamental life, liberty, or property interest and (2) the deprivation was in an arbitrary and capricious manner. *Moulton v. City of Beaumont,* 991 F.2d 227, 230 (5th Cir. 1993). "While the core of substantive due process is protection from arbitrary government action, 'only the most egregious official conduct' is arbitrary in the constitutional sense." *Coleman v. Dretke*, 395 F.3d 216, 224 (5th Cir. 2004) (quoting *Cty. of*

*Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). Cain alleges the criminal trespass warning violates his substantive due process right "to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law[.]" Pl.'s Am. Compl. ¶¶ 181–82, ECF No. 6 (citing *Kent v. Dulles*, 357 U.S. 116, 126 (1958) (finding a substantive due process freedom of movement to travel abroad)). Cain also alleges a deprivation of his fundamental right "to remain in a public place of his choice[.]" *Id.* ¶ 183 (citing *Saucedo-Falls v. Kunkle*, 299 Fed. App'x 315, 319 (5th Cir. 2008) (finding the police officer had no property interest in her position as assistant police chief)). Cain asserts another substantive due process right—the right to be free from punishment for his speech. Pl.'s Am. Compl. ¶ 28, ECF No. 6. But that allegation amounts to an alleged deprivation of Cain's First Amendment free speech right—not of his substantive due process right.

Even accepting all well-pleaded facts in the complaint as true and viewing them in the light most favorable to the plaintiff, the facts alleged do not plausibly give rise to an entitlement to relief under substantive due process. Parents possess no substantive due process right to access school property. *See Meadows v. Lake Travis Indep. Sch. Dist.*, 397 F. App'x 1, at *2 (5th Cir. 2010) (per curiam). Cain concedes as much in his response. Pl.'s Resp. Br. at 19, ECF No. 24. Plaintiffs' invocation of *Kent* and *Saucedo-Falls*, at best, simply does not support his assertion and, at worst, mischaracterizes the law. Cain's putative claim for relief based on a potential substantive due process violation fails as a matter of law. Because Cain has failed to plead a plausible substantive due process liberty or property interest, he may not seek injunctive relief under this claim, and the Court need not address inquiries into the deprivation of that interest or into the qualified immunity defense.

### 3. Equal Protection

A "class of one equal protection claim requires [the plaintiff] to show that (1) he . . . was intentionally treated differently from others similarly situated and (2) there was no rational basis for the difference in treatment." *Patel v. Tex. Tech. Univ.*, 941 F.3d 743, 748 (5th Cir. 2019) (quoting *Lindquist v. City of Pasadena*, 669 F.3d 225, 233 (5th Cir. 2012)) (internal quotation marks omitted). The Fifth Circuit recognizes three different types of "class of one" claims: "selective enforcement"; "personal vindictiveness"; and adverse zoning permit decisions. *Lindquist*, 656 F.Supp.2d at 685 (S.D. Tex. 2009), *aff'd*, 669 F.3d 225 (5th Cir. 2012) (citing *Mikeska v. City of Galveston*, 451 F.3d 376, 381 n. 4 (5th Cir. 2006)).

Cain's Amended Complaint alleges, without citing any legal authority, that Defendants violated his equal protection rights because "others similarly situated, [sic] were not also deprived of their rights[.]" Pl.'s Am. Compl. ¶ 32, ECF No. 6. Defendants argue that Plaintiff's Amended Complaint "makes wholly conclusory allegations that Plaintiff was treated differently from others similarly situated." Defs.' Mot. Br. 12, ECF No. 22. And in his opposition, Cain makes no effort to rebut Defendants' argument or supplement his own argument with legal authority. *See* Pl.'s Resp. & Resp. Br., ECF Nos. 23–24. Cain instead argues that more discovery on the issue will provide information sufficient for an equal protection claim. Pl.'s Resp. Br. at 7, ECF No. 24.

Even accepting all well-pleaded facts in the complaint as true and viewing them in the light most favorable to the plaintiff, the facts alleged do not plausibly give rise to an entitlement to relief under equal protection. Plaintiff points to no other similarly situated individual; Plaintiff does not dispute Defendants' important interest in the safety of the school;[4] and Plaintiff does not raise

---

[4] Defendants correctly assert that maintaining safety and security over schools and students has been held to be a rational basis supporting a decision to restrict a parent's access to district property. *Meadows v. Braxdale*, No. A-08-CA-819-SS, 2009 WL 10700907, at *6 (W.D. Tex. Aug. 18, 2009), *aff'd sub nom.*, *Meadows*, 397 F. App'x 1.

factual allegations that Defendants' issuance of the criminal trespass warning was unrelated to that important interest outside of broad legal conclusions. *See La Cmty. Capital Inv. Fund, Inc. v. Grambling Legends Square Taxing Dist.*, No. 14-2212, 2015 WL 1737954, at *9 (W.D. La Mar. 16, 2015) (dismissing plaintiffs' equal protection claim when plaintiffs' stated explanation for differential treatment was rational); *XP Vehicles, Inc. v. Dep't of Energy*, 118 F. Supp. 3d 38, 78 (D.C. Cir. 2015) (finding plaintiffs' complaint did not contain sufficient allegations to survive defendant's 12(b)(6) motion to dismiss where plaintiff identified no other similarly situated individuals and defendant showed a rational basis for the differential treatment). Cain's putative claim for relief based on a potential equal protection violation fails as a matter of law. Because Cain has failed to plead a plausible equal protection claim, Cain may not seek injunctive relief under this claim, and the Court need not address inquiries into the deprivation of that interest or into the qualified immunity defense.

### 4.  Right to Petition

The right to petition recognizes citizens' freedom to "petition openly[,] … [b]ut the First Amendment does not impose any affirmative obligation on the government to listen [or] to respond…."[5] *Smith v. Ark. State Highway Emps. Local 1315*, 441 U.S. 463, 465 (1979). Cain alleges Defendants deprived his right to petition under the Texas Constitution and the First Amendment because they "denied [Cain] any real right to grieve the trespass warning they issued to him by refusing to allow [Cain]'s grievance to be heard by a person with the authority to remedy the grievance."[6] Pl.'s Am. Compl. ¶¶ 204–07, ECF No. 6. Cain further alleges that he appealed the

---

[5] Texas courts apply federal standards on Texas law right to petition claims. *Zaatari v. City of Austin*, No. 03-17-00812-CV, 2019 WL 6336186, at *17 (Tex. App.—Austin Nov. 27, 2019, no pet.). Accordingly, Plaintiff's state claim also may be analyzed pursuant to the federal standard.

[6] To support its claim, Cain cites the Massachusetts Body of Liberties, the English Bill of Rights, and a state court case reiterating the holding of *Smith*, 441 U.S. at 463. Pl.'s Am. Compl. ¶¶ 205–26, ECF No. 6.

criminal trespass warning to Bohn (as Collie's supervisor), who has exclusive authority to issue and rescind criminal trespass warnings at Aledo ISD. *Id.* ¶¶ 208–09. But Bohn's subordinate Lynn McKinney heard the criminal trespass appeal. *Id.* ¶ 210. Defendants alleged that the Board of Trustees heard the grievance and that Cain has various means of submitting grievances to Aledo ISD. Defs.' Mot. Br. at 17, ECF No. 22. In his response, Cain neither addresses his right to petition claim nor supplements his asserted legal authority. *See* Pl.'s Resp., ECF Nos. 23–24.

Even accepting all well-pleaded facts in the complaint as true and viewing them in the light most favorable to the plaintiff, the facts alleged do not plausibly give rise to an entitlement of relief under the right to petition. Cain's right to petition claim fails as a matter of law: The First Amendment "imposes no affirmative obligation on [Defendants] to listen [or] respond" to Cain. *Smith*, 441 U.S. at 465. Because Cain has failed to plead a plausible right to petition claim, Cain may not seek injunctive relief under this claim, and the Court need not address the qualified immunity defense.

### 5.  Right to Freely Assemble

"The Supreme Court has recognized that the First Amendment protects a right of association in two lines of cases." *Wallace v. Tex. Tech. Univ.*, 80 F.3d 1042, 1051 (5th Cir. 1996) (citing *City of Dallas v. Stanglin*, 490 U.S. 19, 22–24 (1989)). "First, the choice to enter into and maintain certain intimate human relationships is protected as an element of personal liberty." *Id.* "Second, the Court has recognized a right to associate for the purpose of engaging in expressive activities protected by the First Amendment." *Id.* Cain alleges that by issuing the criminal trespass warning, Defendants violated his "right to in a peaceable manner … assemble together for [the] common good" under the Texas Constitution and the First Amendment.[7] Pl.'s Am. Compl. ¶ 200,

---

[7] Texas courts apply Texas freedom to assemble claims only slightly different than the federal standard. *Zaatari v. City of Austin*, No. 03-17-00812-CV, 2019 WL 6336186, at *17 (Tex. App.—Austin Nov. 27, 2019, no pet.) ("under

ECF No. 6. Cain argues the face of the criminal trespass warning violates his right, or alternatively, Collie's alleged threats about interacting with other parents denied Cain's freedom of association. *Id.* ¶¶ 200–02. Outside of the statutes, Cain cites no legal authority to support his conclusion and, again, cites no legal authority in his response. *Id.*

Even accepting all well-pleaded facts in the complaint as true and viewing them in the light most favorable to the plaintiff, the facts alleged do not plausibly give rise to an entitlement to relief under the freedom of assembly. Cain alleged that Collie's warning violated his freedom to associate with another Aledo ISD parent, Ben Youngblood.[8] The "association" appears to be just two parents connected by a Facebook group. Cain's freedom of association claim then must rest on the second line of cases. *See Wallace*, 80 F.3d at 1051 (claim established when the government interferes with the right to maintain intimate relationships or engage in expressive activities). But neither the face of the warning nor the alleged words of Collie ban or compel assembly with anyone for the purposes of First Amendment expressive activities or for the purposes of physical congregation, in a peaceable manner, for their shared welfare and benefit under the Texas Constitution. Even assuming they were associated for political purposes, Collie's acknowledgment that the two were associated on Facebook and "cop to cop" comment about dealing with Youngblood in the past does not plausibly suggest that Bohn directed Collie to take action against Cain for the association. *See, e.g., Caleb v. Grier*, 598 Fed. App'x 227, 238 (5th Cir. 2015). Because Cain has failed to plead a plausible freedom of association claim, Cain may not seek injunctive relief under this claim, and the Court need not address the qualified immunity defense.

---

the plain language of the Texas Constitution, citizens have the right to physically congregate, in a peaceable manner, for their shared welfare or benefit.").

[8] "Collie told Cain to not associate with a parent named Ben Youngblood, stating: "You're dealing with a gentlemen named Ben Youngblood. Cop to cop, that's not a guy you want to be dealing with." Pl.'s Am. Compl. ¶¶ 96–97.

### 6. Free Speech

"When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions." *Watkins v. City of Arlington*, 123 F. Supp. 3d 856, 863–64 (N.D. Tex. 2015) (quoting *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 816 (2000)). Cain alleges two distinct free speech violation theories: (1) that the criminal trespass warning itself or alternatively the delegation of the authority to issue criminal trespass warnings is "the functional equivalent of a law that [unconstitutionally] curtails Plaintiff's freedom of speech" and (2) that "Defendants [do not] have any legal authority to punish Plaintiff or retaliate against Plaintiff for his speech." Pl.'s Am. Compl. ¶¶ 193–97, ECF No. 6. The Court addresses each in turn.

#### a. A Functionally Equivalent Unconstitutional Law Restricting Speech

"To determine whether a law violates the First Amendment, the Court must: (1) assess whether the nature of Plaintiffs' activities deserve First Amendment protection; (2) identify the type of the forum involved; and then (3) determine whether [Defendants'] justification for the restriction satisfies the appropriate standard." *Watkins*, 123 F.Supp.3d at 863–64 (citing *Netherland v. City of Zachary*, 626 F.Supp.2d 603, 606 (M.D. La. 2009)). If the speech is protected speech in a traditional public forum, governments may impose "reasonable restrictions on the time, place, or manner of protected speech." *McCullen v. Coakley*, 573 U.S. 464, 477 (2014). For "[a] time, place, or manner restriction on speech in a public forum to be upheld[, it must] (1) be justified without reference to the content of the regulated speech; (2) be narrowly tailored to serve a significant governmental interest; and (3) leave open ample alternative channels for communication of information." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

Cain alleges that the criminal trespass warning itself, or alternatively the delegation of the authority to issue criminal trespass warnings, is "the functional equivalent of a law that

[unconstitutionally] curtails Plaintiff's freedom of speech[.]" Pl.'s Am. Compl. ¶¶ 194–95, ECF No. 6. In other words, the government's action limits Cain's speech. In their briefing, neither party squarely addresses the issue. Defendants argue that Cain's speech was not on a matter of public concern, but was a threat unprotected by the First Amendment, or both. Defs.' Mot. Br. at 12–15, ECF No. 22. Defendants also raise a line of cases showing deference to schools in regulating disruptive and threating speech and the safety of schools as a rational basis. *Id.* Cain's response makes no mention of this theory, instead focusing on retaliation. *See* Pl.'s Resp., ECF Nos. 23–24.

Accepting all well-pleaded facts in the complaint as true and viewing them in the light most favorable to the plaintiff, the facts alleged do plausibly give rise to an unconstitutional curtailment of free speech and to an entitlement to relief under the First Amendment. Cain posted to Facebook on September 23, 2019, and the next day, Defendants Bohn and Collie hailed Cain into a meeting about the post. At that meeting, Defendant Collie issued the criminal trespass warning. Pl.'s Am. Compl. ¶ 105–13, ECF No. 6. Defendants issued the criminal trespass warning in direct response to Cain's speech with an eye toward curtailing it in the future, and Defendants concede as much in their motion to dismiss by arguing that the speech was a threat or disturbance worthy of suppression. Defs.' Mot. Br. 11–17, ECF No. 22. Accordingly, Cain has stated a valid claim that they have violated his First Amendment rights. The Court now turns to evaluate Defendants Bohn and Collie would be entitled to qualified immunity nonetheless.

Cain alleges that Defendants violated the clearly established right that "the government may not punish citizens for their speech or expressive conduct simply because the government disapproves of the ideas expressed[.]" Pl.'s Resp. Br. at 1, ECF No. 24. But even accepting Cain's argument as true, the clearly established right exists under a retaliation theory—not a prior restraint theory. The plaintiff has the burden to point out the clearly established law, and Cain points to no

additional legal authority to support the allegation in his response. "[W]henever there is alleged a defense of qualified immunity . . . the complaint must state with factual detail and particularity the basis for the claim which necessarily includes why the defendant-official cannot successfully maintain the defense of immunity." *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994); *see also Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997) (The law does "not require that an official demonstrate that he did not violate clearly established federal rights; [Fifth Circuit] precedent places that burden upon plaintiffs."); *see also Wicks v. Miss. State Employment Servs.*, 41 F.3d 991 (5th Cir. 1995) (when faced with a motion to dismiss, the complaint must allege specific facts to negate qualified immunity). Because Cain failed to meet his burden, Bohn and Collie are entitled to qualified immunity as to Cain's First Amendment prior restraint claim. Because qualified immunity applies, the Court does not address official and statutory immunity under Section 22.0511 of the Texas Education Code.

### b. An Unconstitutional Retaliation for Free Speech

"The government may not [restrict or allow speech] based on hostility—or favoritism—towards the underlying message expressed." *R.A.V. v. City of Saint Paul*, 505 U.S. 377, 386 (1992). Such restrictions "are presumptively invalid" regardless of the forum. *Id.* at 382. To show government retaliation against a private citizen for his speech, the plaintiff must allege "(1) [he was] engaged in constitutionally protected activity, (2) the defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct." *Keenan v. Tejeda,* 290 F.3d 252, 258 (5th Cir. 2002) (citations omitted). As a general matter, speech is usually protected, with restrictions placed only on limited types of speech such as obscenity, defamation, fighting words, and true threats.

*R.A.V.*, 505 U.S. at 382–83. True threats "encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals. The speaker need not actually intend to carry out the threat." *Virginia v. Black*, 538 U.S. 343, 344 (2003) (citing *R.A.V.*, 505 U.S. at 388) (internal citations omitted).

Cain alleges that "[t]he illegal trespass warning was issued by the individual Defendants in retaliation for [Cain]'s speech on social media criticizing Defendant Aledo ISD." Pl.'s Am. Compl. ¶ 27, ECF No. 6. Defendants argue that Cain's speech was not on a matter of public concern, that schools have deference to regulating threating speech, and that disruptive and threatening behavior can be a rational basis for regulating speech. In support of their criminal trespass warning, Defendants point to the content of Cain's Facebook post, the use of a minor's name and image, and the litany of resulting complaints as a threat and disruption warranting such a response. Defs.' Mot. Br. 11–17, ECF No. 22. Cain asserts that, because the Defendants would not have punished another parent for a similar Facebook post praising a minor by name and image on the same group, Defendants' claim that the criminal trespass warning was a result of Cain's use of the minor's name and image is actually evidence of the school's viewpoint discrimination. *Id.* at 16.

Whether the speech is a matter of public concern is irrelevant to government's retaliation against a private citizen for his speech. *See, e.g., Cash v. Lee Cty. Sch. Dist.*, No. 1:11-CV-00154-SA-DAS, 2012 WL 6737540, at *3–4 (N.D. Miss. Dec. 28, 2012). Based on the alleged facts, Defendants issued the criminal trespass warning in response to Cain's Facebook posts. Criticism of public officials, and of the policies for which they are responsible, lies at the very core of that speech protected by the First Amendment. *See Colson v. Grohman*, 174 F.3d 498, 507 (5th Cir. 1999). Accepting all well-pleaded facts in the complaint as true and viewing them in the light most

favorable to the plaintiff, the facts alleged plausibly show Defendants Bohn and Collie retaliated against Cain in violation of his First Amendment rights. The Court next considers whether they are protected by qualified immunity, notwithstanding their retaliation against Cain.

Cain alleges that Defendants violated the clearly established right that "the government may not punish citizens for their speech or expressive conduct simply because the government disapproves of the ideas expressed[.]" Pl.'s Resp. Br. 1, ECF No. 24. First, Cain notes that the Supreme Court's general statement in *R.A.V.* is sufficient to create a clearly established right only when the statement is "inherently capable of giving fair and clear warning to [Defendants]" that giving Cain a criminal trespass warning in retaliation for his Facebook post was a "rare obvious case" of unconstitutional action. *Id.* at 14 (citing *Amador v. Vasquez*, 952 F.2d 624, 632–33 (5th Cir. 2020), *abrogated by* 961 F.3d 721 (5th Cir. 2020) (abrogated on other grounds) (recognizing some unlawful conduct by officers could be sufficiently clear to constitute a violation of a general statement of law). Cain's argument lacks merit. This is no "rare obvious case[,]" as apparent by the line of cases allowing schools to respond to disruptive speech and Cain's alternative reliance on *Longoria*. *See infra* Part III(A)(6)(b). The general statement in *R.A.V.* would not have given Defendants Bohn and Collie, or every other similarly situated reasonable school official, fair and clear warning about the alleged unconstitutionality of their actions. *See City of Escondido v. Emmons*, 139 S. Ct. 500, 504 (2019); *Wesby*, 138 S. Ct. at 590.

Second, Cain points to *Longoria* to support the conclusion that, at the time the criminal trespass warning was issued, Cain had a clearly established right to be free from punishment or retaliation by a school district for "non-threatening off campus speech[.]" Pl.'s Resp. Br. at 4, ECF No. 24 (citing *Longoria*, 942 F.3d at 269). But *Longoria* could not have provided that notice in this case because that opinion is dated November 4, 2019—nearly two months after the

unconstitutional action. Cain argues that failure to rescind the criminal trespass warning on and after November 4, 2019, constituted and still constitutes an ongoing violation of a clearly established right. *Id.* at 12.

Even if the Court accepts Cain's argument, Defendants are still entitled to qualified immunity. *Longoria* found qualified immunity applicable for a school official when the official removed a student from a cheerleading team for a series of profane posts on her personal social media accounts. 942 F.3d at 269. "Where no controlling authority specifically prohibits a defendant's conduct, … the law cannot be said to be clearly established." *Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011), *cert. denied,* 132 S. Ct. 2740 (2012). *Longoria* does not "specifically prohibit [Bohn's or Collie's] conduct" nor is it "clear enough that every reasonable [school] official would interpret it to establish the particular rule the plaintiff seeks to apply." *Wesby*, 138 S. Ct. at 590. The plaintiff has the burden to point out the clearly established law, and Cain points to no additional legal authority in his response to support his allegation. *See Clarkston*, 943 F.3d at 993. Accordingly, Defendants Bohn and Collie are entitled to qualified immunity as to Cain's First Amendment retaliation claim. Because qualified immunity applies, the Court does not address official and statutory immunity under Section 22.0511 of the Texas Education Code. As Cain only raised his First Amendment free speech claim against the Defendants in their individual capacities, only the requested prospective injunctive relief related to his free speech claim may proceed.

## IV.    CONCLUSION

Granting a motion to dismiss filed pursuant to Rule 12(b)(6) is appropriate when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S.

at 556). Based on the foregoing, the Court finds that (1) Cain's well-pleaded factual allegations fail to state facially plausible claims that Defendants are liable for violating Cain's procedural due process rights, substantive due process rights, equal protection rights, First Amendment rights to petition and to freely assemble; (2) Cain has stated a claim that Defendants Bohn and Collie violated his First Amendment right to be free from government retaliation for speech; and (3) Cain's monetary claim for a violation of his free speech right cannot go forward against Defendants Bohn and Collie because of their entitlement to qualified immunity.

Based on the reasoning above, the Court finds that Defendants Bohn and Collie's Motion to Dismiss should be and is hereby **GRANTED.** Accordingly, under his First Amendment free speech claim, only Cain's request for monetary relief against Defendant Aledo ISD and his request for injunctive relief against Defendants Aledo ISD and Defendants Bohn and Collie in both their official and individual capacities may proceed. Cain's remaining § 1983 claims are hereby **DISMISSED**, and Plaintiff's Motions to Dismiss (ECF Nos. 10, 18) is **DENIED without prejudice to his refiling to address the issues resolved in this Order**.

**SO ORDERED** on this **3rd day** of **September, 2020.**

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**