IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| CHARLES "CHAD" CAIN, III, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:20-cv-00442-O |
| | § | |
| ALEDO INDEPENDENT SCHOOL DISTRICT et al., | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court are Plaintiff Charles "Chad" Cain III's Motion for Hearing on Temporary Injunction ("Mot. for Prelim. Inj.") (ECF No. 41), filed September 17, 2020; Defendants' Response in Opposition to Plaintiff's Motion for Hearing on Temporary Injunction (ECF No. 52), filed September 22, 2020; and Plaintiff's Reply (ECF No. 53), filed September 22, 2020. The Court construes Plaintiff's Motion for Hearing on Temporary Injunction (ECF No. 41) as a request for a preliminary injunction under Federal Rule of Civil Procedure 65. Additionally, the parties appeared at a hearing on the request for a preliminary injunction and presented testimony and arguments on September 23, 2020. ECF No. 55.

For the following reasons, the Court concludes at this stage of the proceedings that the criminal trespass warning should be lifted. Accordingly, Plaintiff's motion for preliminary injunction should be and is hereby **GRANTED**.

## I. BACKGROUND

The following factual recitation is taken from Plaintiff's Third Amended Complaint (ECF No. 6) unless stated otherwise.[1] Plaintiff Charles "Chad" Cain, III ("Cain") is the father of a student attending Aledo Middle School in the Aledo Independent School District ("Aledo ISD") under Defendant Superintendent Susan Bohn's ("Superintendent Bohn") supervision. On September 10, 2019, an Aledo ISD representative called Cain to tell him that his son had been assaulted by another student, rendering his son unconscious and concussed. According to Aledo ISD, the other student was punished with an in-school suspension. Feeling the punishment insufficient, Cain attempted to appeal to Superintendent Bohn and other school administrators and to file assault charges with Defendant Aledo ISD Police Chief Fred Collie ("Chief Collie") and Aledo ISD police officer Wes Cummins. Cain confirmed the concussion, formally filed the assault charge with Officer Cummins, and filed a "Bully Report" with Aledo ISD. During an interview with Officer Cummins, the student admitted to assaulting Cain's son. The student's family (the "Neil family") was present for the interview. Meanwhile, Cain grew frustrated when he learned that the student who assaulted his son continued participating in football practice during his suspension. Aledo Middle School Principal Mandy Musselwhite informed Cain that "the athletic department was completely different from the school and gave [its] own punishment[,]" Am. Compl. ¶ 62, but the nature of the punishment remained unclear to Cain. Cain complained to Aledo ISD Athletic Director Steve Wood, who rejected Cain's request to suspend the punished student from football practices and stated "life wasn't always fair[.]" *Id.* ¶ 68.

That same day, Cain posted on his Facebook page an expression of his frustration with Aledo ISD. Two days later, he posted a video that named the student who assaulted his son and

---

[1] Page numbers cited throughout the Court's Order refer to the page numbers assigned by the Court's electronic docket.

displayed images of other students. Ms. Neil, the punished student's mother, was an Aledo ISD employee, and she complained to Chief Collie about Cain's Facebook posts, specifically citing Cain's use of the student's full name and the over four hundred corresponding comments that resulted. The next day, Cain visited the school to appeal the punishment once again, and in a brief meeting that he recorded, Chief Collie, among other comments, asked Cain to stay off Facebook and avoid interacting with another parent on it. Cain, still disappointed in the ultimate outcome, returned to Facebook that day and posted to a group entitled "Aledo Daily Gripes" the following:

> Hi Aledo! I would like for y'all to think about something. The census [sic] is that most, if not all mass school shootings were caused from bullying. If this were true and society is getting worse, will it happen here in Aledo if this school administration keeps bullying the parents by pulling out the broom for the bullys [sic]? Think about that parents!!.

Am. Compl. ¶ 105.

The next day and just two weeks after the in-class assault, Cain met with Chief Collie and Superintendent Bohn, and Chief Collie issued a criminal trespass warning to Cain under Section 30.05 of the Texas Penal Code, at the direction of Superintendent Bohn. The criminal trespass warning stated

> As you know, on September 23, 2019, you and I discussed the posts that you have made on Facebook recently regarding a student enrolled in Aledo ISD. Since that conversation, you have engaged in further conduct publicly on social media that has caused a significant amount of fear among our parents and staff for the safety of our students, staff, and parents on campus and at district events.
>
> I am writing to inform you that you are no longer authorized to be physically present on any Aledo I.S.D. property or at any Aledo I.S.D. event absent prior written approval by a school or district administrator.
>
> Any meeting that a campus or district administrator schedules with you will be pre-arranged and approved and will be held off-campus and at the Aledo I.S.D. Central Administration building. You may schedule meetings through Aledo Middle School Principal, Mandy Musselwhite, or Aledo I.S.D. Deputy Superintendent, Lynn McKinney.

Am. Compl. ¶ 116.

On September 30, 2019, Cain challenged the warning by filing a grievance under Aledo ISD policy and, through his lawyer, threatened to sue if Chief Collie did not rescind the criminal trespass warning. Superintendent Bohn refused to hear Cain's grievances or to talk to Cain about the warning when Cain appeared before the Aledo ISD Board of Trustees. Instead, Deputy Superintendent Lynn McKinney heard Cain's grievances, and the Aledo ISD Board of Trustees denied Cain's request that it lift or rescind the warning. In the following months, Aledo ISD representatives clarified that the trespass warning bars Cain from driving his son onto school grounds and from participating in his son's school activities but does not prohibit him from attending Board meetings. Cain has since been excluded from his son's football games and on-campus, non-school-sponsored baseball practices.

Cain alleges civil rights violations under 42 U.S.C. § 1983, specifically alleging violation of his free speech rights.[2] Cain seeks monetary damages, attorneys' fees, injunctive relief, declaratory relief, and mandamus relief for the criminal trespass warning to the extent available under § 1983. Although given the misnomer of "temporary injunction" in his motion, Cain now seeks a preliminary injunction under Federal Rule of Civil Procedure 65 to enjoin the enforcement of the criminal trespass warning issued on September 24, 2019. Mot. for Prelim. Inj. 1.

---

[2] Cain originally raised several claims under Section 1983, including alleged violations of his procedural due process rights, his substantive due process rights, his right to equal protection under the law, his right to freely associate and assemble, and his right to petition. The Court has dismissed those claims and granted qualified immunity to Defendants Superintendent Bohn and Chief Collie in their individual capacities. Only Cain's free speech claim and request for monetary relief against Defendant Aledo ISD and for prospective injunctive relief against Defendants remain. *See* Am. Order, ECF No. 35.

## II. LEGAL STANDARDS

### A. First Amendment Retaliation

"The government may not [restrict or allow speech] based on hostility—or favoritism—towards the underlying message expressed." *R.A.V. v. City of Saint Paul*, 505 U.S. 377, 386 (1992). Such restrictions "are presumptively invalid" regardless of the forum. *Id.* at 382. To show government retaliation against a private citizen for his speech, the plaintiff must allege "(1) [he was] engaged in constitutionally protected activity, (2) the defendants' actions caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiff['s] exercise of constitutionally protected conduct." *Keenan v. Tejeda,* 290 F.3d 252, 258 (5th Cir. 2002) (internal citations omitted). As a general matter, speech is usually protected, with restrictions placed only on limited types of speech such as obscenity, defamation, fighting words, and true threats. *R.A.V.*, 505 U.S. at 382–83. True threats "encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals. The speaker need not actually intend to carry out the threat." *Virginia v. Black*, 538 U.S. 343, 344 (2003) (citing *R.A.V.*, 505 U.S. at 388) (internal citations omitted).

### B. Preliminary Injunction

The Fifth Circuit set out the requirements for a preliminary injunction in *Canal Authority of State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974). To prevail on an application for a preliminary injunction, the movant must show: (1) a substantial likelihood that the movant will ultimately prevail on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to the movant outweighs

whatever damage the proposed injunction may cause the opposing party; and (4) that granting the injunction is not adverse to the public interest. *Id.*; *see also Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008).

To qualify for a preliminary injunction, the movant must clearly carry the burden of persuasion with respect to all four requirements. *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 363 (5th Cir. 2003). If the movant fails to establish any one of the four prerequisites to injunctive relief, relief will not be granted. *Women's Med. Ctr. of Nw. Hous. v. Bell*, 248 F.3d 411, 419 n.15 (5th Cir. 2001). A movant who obtains a preliminary injunction must post a bond to secure the non-movant against any wrongful damages it suffers as a result of the injunction. Fed. R. Civ. P. 65(c).

The decision to grant or deny preliminary injunctive relief is left to the sound discretion of the district court. *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985) (citing *Canal*, 489 F.2d at 572). A preliminary injunction "is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion." *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989) (quoting *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985)). Even when a movant satisfies each of the four *Canal* factors, the decision whether to grant or deny a preliminary injunction remains discretionary with the district court. *Miss. Power & Light*, 760 F.2d at 621.

### III. ANALYSIS

Cain argues that the Court should enjoin enforcement of the criminal trespass warning because it violates the First Amendment's Free Speech Clause and that he is irreparably harmed by its enforcement. *See generally* Mot. for Prelim. Inj. Defendants counter that Cain is not entitled to a preliminary injunction because he is unlikely to succeed on the merits of his claim. Defs.'

Resp 3-6. In support, Defendants contend (1) Cain's September 23, 2019, Facebook post (the "Post") was a constitutionally unprotected true threat and (2) Defendants were not substantially motivated by Cain's constitutionally protected speech. *Id.* Defendants also argue Cain is not entitled to a preliminary injunction because (1) he fails to establish irreparable harm and (2) the balance of equities and public interest favor denying injunctive relief. *Id.* at 6-8.

### A.      Preliminary Injunction

#### 1.    Likelihood of Success on the Merits

The first consideration in determining whether to grant Cain's motion for preliminary injunction is whether he has shown a likelihood of success on the merits for his claim. This requires Cain to present a prima facie case. *Daniels Health Scis., LLC v. Vascular Health Scis.*, 710 F.3d 579, 582 (5th Cir. 2013) (citing *Janvey v. Alguire*, 647 F.3d 585, 595–96 (5th Cir. 2011)). A prima facie case does not mean Cain must prove he is entitled to summary judgment. *Byrum v. Landreth*, 566 F.3d 442, 446 (5th Cir. 2009); *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (A party "is not required to prove his case in full at a preliminary injunction hearing.").

To show a prima facie case of government retaliation against a private citizen for his speech, Cain must show "(1) [he was] engaged in constitutionally protected activity, (2) [D]efendants' actions caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) [D]efendants' adverse actions were substantially motivated against [his] exercise of constitutionally protected conduct." *Keenan*, 290 F.3d at 258 (internal citations omitted). Defendants challenge the likelihood of success, specifically for the first and third elements of Cain's claim. Defs.' Resp 3-6.

*a. Cain's Post was not a Constitutionally Unprotected True Threat*

Cain contends that his Post was constitutionally protected speech that cannot be punished or retaliated against by Defendants with a criminal trespass warning. Am. Compl. ¶¶ 226-34; Mot. for Prelim. Inj. ¶¶ 2-3. In response, Defendants maintain that Cain's Post constituted a true threat or a substantial disruption outside of First Amendment protection and regulable by the school administrators. Defs.' Resp 3-6. At the preliminary injunction hearing, Superintendent Bohn provided testimony in support of Defendants' argument. She highlighted the stress and uncertainty of threats of school violence and emphasized the decisions school administrators have to make to protect the students and school community with only limited time and without the benefit of hindsight.[3]

Like the Supreme Court and Fifth Circuit, this Court remains mindful and vigilant concerning the threat of violence in schools, the difficult decisions many school administrators must make in protecting their students and school communities, and the significant burden of responsibility imposed on those individuals like Superintendent Bohn and Chief Collie. *See Carey v. Brown*, 447 U.S. 455, 470–71 (1980) (recognizing that because of the threat of school violence, educators have heightened abilities to restrict speech on school property); *see also Bell v. Itawamba Cty. Sch. Bd.*, 799 F.3d 379, 391 (5th Cir. 2015); *Ponce v. Socorro Indep. Sch. Dist.*, 508 F.3d 765, 771–72 (5th Cir. 2007). When there is a question about the nature of the speech, the

---

[3] *See, e.g.,* Unofficial Transcript 8:2-11 ("Superintendent Bohn's Testimony") ("[I]t was a broad concern about the safety of our schools, which is ultimately my ultimate responsibility, but also a significant concern for the safety of this particular family and especially this 12 or 13 year old who was a 7th grader at the time. … I was incredibly concerned about the potential for violence at that football game[.]").

doctrine of qualified immunity recognizes and serves this precise interest,[4] but the broader fear of violence does not itself lower the constitutional bar for protected speech.

To the extent Defendants argue that the First Amendment does not protect otherwise protected speech that causes disruptions for schools, Defendants ask the Court to adopt a form of the *Tinker*-substantially-disruptive test. *See* Defs.' Resp 4; *see Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 508 (1969) (overturning students' suspensions for wearing black armbands to protest U.S. involvement in the Vietnam War because the "conduct [did not] materially and substantially interfere with the requirements of appropriate discipline in public school[.]"); *accord Bell*, 799 F.3d at 397; *accord Ponce*, 508 F.3d at 766; *see also Goss v. Lopez,* 419 U.S. 565, 582–83 (1975) (like *Tinker*, lowering the requirements for due process because a school's student was at issue). *Tinker* is not controlling here. *Tinker* is limited to student speech and is, thus, inapplicable to the present circumstances. Therefore, the Court must analyze Cain's claim under the traditional free speech framework instead of the less protective standards used by the courts in the context of student speech. *See, e.g., O'Neal v. Alamo Cmty. Coll. Dist.*, No. SA-08-CA-1031-XR, 2010 WL 376602, at *14 (W.D. Tex. Jan. 27, 2010).

As discussed above, speech is usually constitutionally protected, with only limited exceptions such as obscenity, defamation, fighting words, and true threats. *R.A.V.*, 505 U.S. at 382–83. True threats "encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or

---

[4] *See Brinsdon v. McAllen Indep. Sch. Dist.*, 863 F.3d 338, 347 (5th Cir. 2017), *as revised* (July 3, 2017) ("[E]ducators are entitled to qualified immunity unless no 'reasonable official' would have deemed the disputed conduct constitutional.") (citation omitted); *see also Pearson v. Callahan*, 555 U.S. 223, 231 (2009) ("Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.").

group of individuals." *Black*, 538 U.S. at 344 (citing *R.A.V.*, 505 U.S. at 388) (internal citations omitted). "The speaker need not actually intend to carry out the threat." *Id.* "A prohibition on true threats protect[s] individuals from the fear of violence and from the disruption that fear engenders, in addition to protecting people from the possibility that the threatened violence will occur." *Id.* at 360 (internal quotation marks omitted). But "[w]hatever harm the target of the purported threat received is irrelevant." *Monroe v. Houston Indep. Sch. Dist.*, 794 F. App'x 381, 385 (5th Cir. 2019). The Fifth Circuit has elaborated on the true threat test by adding an objectively reasonable person standard:

> Speech is a true threat and therefore unprotected if an objectively reasonable person would interpret the speech as a serious expression of an intent to cause a present or future harm. The protected status of the threatening speech is not determined by whether the speaker had the subjective intent to carry out the threat; rather, to lose the protection of the First Amendment and be lawfully punished, the threat must be intentionally or knowingly *communicated* to either the object of the threat or a third person.

*Porter v. Ascension Parish Sch. Bd.*, 393 F.3d 608, 616 (5th Cir. 2004) (emphasis in original) (internal quotation marks omitted).

Even if the speech is threatening or actually causes fear and harm among individuals, the Supreme Court has chosen "to protect even hurtful speech on public issues to ensure that we do not stifle public debate." *Snyder v. Phelps*, 562 U.S. 443, 458–59, 462 (2011) (setting aside a jury verdict imposing tort liability for intentional infliction of emotional distress where the speech was on a matter of public concern, and thus "entitled to 'special protection' under the First Amendment"). At the preliminary injunction stage, the district court should determine whether the speech at issue is a political activity or a legitimate threat of violence. *Monroe v. Houston Indep. Sch. Dist.*, 794 F. App'x 381, 385 (5th Cir. 2019) (The district court must decide whether the

speech is an "attempt to get a [school official] fired through protest, public activism, and political activity [or] a legitimate threat to murder a school [official].").

In this case, Defendants issued the criminal trespass warning in response to, at least in part,[5] Cain's September 23, 2019, Facebook post,[6] believing that it constituted a true threat. *See* Superintendent Bohn's Test. 7:23-8:1 ("then I see this post on the 24th which is, essentially, the culminating event to all of that and that—the discussion of the shooting, being very specific about Aledo."); Superintendent Bohn's Test. 55:20-24 ("Q. Ms. Bohn, other than [] what we've looked at, we've looked at the *Facebook* posts, is there anything in the other posts that you talked about with Ms. Robinson that you say is a true threat? / A. In and of itself, no. Other than the one post."). Thus, based on the testimony at the hearing and the arguments espoused by Defendants in their legal briefs, *see* Defs.' Resp. at 5 (citing *Black*, 538 U.S. at 359), the Court confines its analysis to the only allegedly threatening speech identified by Defendants, namely, Cain's Post. The Court will consider Cain's other posts and behavior, however, to provide proper context.

Cain's Post facially criticizes the Aledo ISD administration's policies. Thus, even if the speech is otherwise harmful or threatening, the speech is presumptively constitutionally protected. *See Colson v. Grohman*, 174 F.3d 498, 507 (5th Cir. 1999). Even if the Post is considered crude and Cain used potentially offensive words to express his disdain for Defendants' response to his son's bullying, Cain's testimony and Exhibits 11 and 12 do not show an "unhinged"[7] vigilante character. Instead these items show a concerned parent interested in protecting his son from future bullying, urging the school district to punish more firmly bullying in both his son's case and other

---

[5] *See infra* Part III(A)(1)(b).

[6] Defs.' Ex. 1 ("If this were true and society is getting worse, will it happen here in Aledo if this school administration keeps bullying the parents by pulling out the broom for the bullys [sic]?").

[7] *See* Unofficial Transcript, Chief Collie's Test.

cases, and turning to Facebook as a means of engaging with Aledo ISD constituents to challenge the school district's bullying policies.[8] *See* Unofficial Transcript, Mr. Cain's Test.; Pl.'s Exs. 11 ("Defendant [Chief] Collie Body Camera Video"), 12 ("Chad Cain Video"). Accordingly, Cain's speech is likely the kind of "political hyperbole" that the Supreme Court has cautioned against punishing. *Watts v. United States*, 394 U.S. 705, 708 (1969) (finding no true threat against the United States President from the following words: "If they ever make me carry a rifle[,] the first man I want to get in my sights is L.B.J."). Cognizant of the political nature of Cain's speech, the Court begins with the presumption that his Post was constitutionally protected speech.

Defendants argue that their reaction and fear stemmed from a portion of Cain's post alluding to school shootings: "The census [sic] is that most, if not all mass school shootings were caused from bullying . . . [W]ill it happen here in Aledo if this school administration keeps bullying the parents by pulling out the broom for the bullys [sic]?" Defs.' Ex. 1; *see* Superintendent Bohn's Test. 7:23-8:1, 24:19-21. Defendants suggest that the words themselves and the context support the reasonable inference that Cain impliedly threatened the unlawful act of shooting students and parents at the school, specifically, the Neil family and bystanders, if the school administrators did not take action against a bully—presumably the student who assaulted Cain's son. *Id.* at 25:4-7. Defendants also note that Cain is a police officer who carries a weapon which made the threat more plausible to the administrators and many parents and students. *Id.* at 35:18-21 ("And then with just sort of unfettered access that he has to our campuses as a police officer, he could be in uniform, certainly could carry a gun any time he wanted to. That caused me another level of concern."). Defendants also maintain that Cain needed to de-escalate, offer assurances, act

---

[8] The offensive and political nature of the speech may be precisely why it garnered some 400+ comments from community members and parents. *See* Defs.' Ex. 3 at DEFs 601 ("Email from Mary Neil to Fred Collie").

reasonably, or disclaim others' Facebook posts or comments,[9] but those arguments are of no moment because they do not address the question of whether Cain's Post was an unprotected true threat.

To determine whether the Post was a true threat, the Court asks "if an objectively reasonable person would interpret the speech as a serious expression of an intent to cause a present or future harm [to an individual or group of individuals]"—not whether Cain acted reasonably,[10] not whether the school officials acted reasonably,[11] and not whether Superintendent Bohn or Chief Collie honestly perceived the speech as a threat.[12] *See Porter*, 393 F.3d at 616 (citing *Black*, 538 U.S. at 344).

The Court must decide whether a reasonable observer of Cain's Post would believe that it is a serious expression of Cain's subjective intent to threaten the Defendants (or presumably a specific identifiable third party) with an unlawful violent act. Based on the evidence and testimony, the Court concludes that the answer is plainly no. While an objectively reasonable person may view the Post as imprecise, crude, and possibly ill-advised, the person would likely be unable to identify Cain's subjective intent to threaten violence. Defendants' own exhibits support this

---

[9] *See* Superintendent Bohn's Testimony 41:23-42:6; *see also* Unofficial Transcript ("Mr. Cain's Testimony") 1:2-2:5 ("Q: And you know that a way to avoid a situation getting out of control and people engaging in violence is to de-escalate a situation rather than escalate it, don't you, sir? . . . Q: even though you are receiving negative feedback and individuals who were telling you that your posts were inappropriate, you escalated the behavior[, right?]").

[10] *See* Superintendent Bohn's Testimony 43:9-11 ("looking at everything at a time when we could have withdrawn it from the trespass point earlier had there been some expression [disclaiming violence]").

[11] *See* Superintendent Bohn's Testimony 40:21-25 ("whether the speech is protected [depends on whether] reasonable school officials would believe that he is making a true threat.").

[12] *See* Superintendent Bohn's Testimony 55:20-24 ("Q. Ms. Bohn, other than [] what we've looked at, we've looked at the *Facebook* posts, is there anything in the other posts that you talked about with Ms. Robinson that you say is a true threat? / A. In and of itself, no. Other than the one post.").

understanding. Defs.' Resp. App. Exhibit A-1 at DEFs 00726, ECF No. 52-1. In filing a complaint, a parent wrote the following:

> Because of 3 other posts (not pictured) made by this man in which he expressed anger and frustration (in both posts and comments), I became concerned when I read this post. **Although there is no direct threat**, today's climate encourages me to bring this to your attention.

*Id.* The complainant saw Cain's post, the comments associated with it, and his other relevant posts. *See id.* Likely representative of a reasonable observer, she perceived Cain as angry and frustrated but expressly did not perceive an intent to threaten anyone. *See id.* Indeed, Superintendent Bohn could not precisely identify Cain's subjective intent from the Post without drawing a series of inferences beyond the words or the context of his behavior. *See* Superintendent Bohn's Test. 6:15-7:3 ("this is my interpretation because I'm the one assessing the threat, he says that he's being bullied and that is this bullying going to cause a mass shooting here in Aledo? He was specific about naming our district. He spoke about [] school shootings and I believe that to be threatening to the safety of our district.").

Additionally, several times during their testimony, Superintendent Bohn and Chief Collie described the individual or group at whom Cain aimed his alleged threat. At times, it was the student who had assaulted Cain's son[13]; at times, the Neil family generally[14]; at times, the Aledo ISD students[15]; at times, the Aledo ISD more generally[16]; and at times, the broader Aledo

---

[13] Superintendent Bohn Test. 10:22-23 ("a student is being targeted in a negative way by a parent").

[14] Superintendent Bohn Test. 25:16-18 ("he was targeting a specific child and specifically that child's mother.").

[15] Superintendent Bohn Test. 8:17-20 ("This, in and of itself, by itself, which is—it's hard to look at. There's quite a bit of context leading up to this. This, by itself, cause immediate to have more of a general concern for the safety of our campus.").

[16] Superintendent Bohn Test. 7:2-3 ("He spoke about [] school shootings and I believe that to be threatening to the safety of our district.").

14

community.[17] This sort of elusive, amorphous, undirected, and generalized threat is insufficient to demonstrate a constitutionally unprotected true threat. *See, e.g., Elonis v. United States*, 135 S. Ct. 2001, 2016 (2015) (Alito, J., concurring part) (emphasis added) ("Statements on social media that are *pointedly directed* at their victims, by contrast, are much more likely to be taken seriously.").

The First Amendment prevents the government, including Defendants, from punishing speech that is, in their view, ill-advised, irresponsible, unacceptable, worrisome, unreasonable, imprecise, or crude. *See R.A.V.*, 505 U.S. at 382–83. The Court "agree[s] with [Cain] that his only offense here was 'a kind of very crude offensive method of stating a political opposition to the [Aledo ISD administration].'" *Watts*, 394 U.S. at 708. Accordingly, the Court concludes that Cain has demonstrated by a preponderance of the evidence that he has a substantial likelihood of succeeding in showing his Post was constitutionally protected speech.

> b. *Defendants' Issuance of the Criminal Trespass Warning was Substantially Motivated by Cain's Post*

Cain argues that Defendants were substantially motivated by his Post. Mot. for Prelim. Inj. 1-2. Defendants disagree and cite as their motivation the totality of the circumstances, including the prevalence of school violence across the United States at the time (Superintendent Bohn's Test. 37:8-13), Cain's ability to carry weapons (Superintendent Bohn's Test. 35:18-21), fear and complaints from other parents and community members in response to the Post (Defs.' Exs. 3, 4), other posts by Cain specifically mentioning juveniles by name (Superintendent Bohn's Test. 30:22-31:4), Cain's filming interactions with Aledo ISD employees on campus (Pl.'s Ex. 11; Superintendent Bohn Test. 25:23-25), and his anger towards Aledo ISD employees, Aledo ISD

---

[17] Superintendent Bohn Test. 8:24-9:2 ("Q. Ma'am who is this -- who do you conclude that this *Facebook* post directs a threat toward? / A. Sure. Our students. Our staff, our parent, our general communities around particularly Aledo Middle School.").

administrators, and the Neil family (Defs.' Exs. 5-7, 13, 19; Superintendent Bohn's Test. 58:9-17). *See also* Defs.' Resp. 6-8.

As an initial matter, the face of the September 24, 2019, criminal trespass warning and its timing both support the notion that Defendants were substantially motivated by Cain's Post:

> As you know, on September 23, 2019, you and I discussed the posts that you have made on Facebook recently regarding a student enrolled in Aledo ISD. Since that conversation, you have engaged in further conduct publicly on social media that has caused a significant amount of fear among our parents and staff for the safety of our students, staff, and parents on campus and at district events.

Defs.' Ex. 18. The criminal trespass warning makes no mention of any of the other motivations now raised in Defendants' arguments, exhibits, and testimony. The content and timing of the warning alone are sufficient for the Court to conclude that Defendants were substantially motivated by the Post. Superintendent Bohn's testimony further supports the Court's conclusion. *See* Superintendent Bohn's Test. 55:20-24 ("Q. Ms. Bohn, other than the what we've looked at, we've looked at the *Facebook* posts, is there anything in the other posts that you talked about with Ms. Robinson that you say is a true threat? / A. In and of itself, no. Other than the one post."); *id.* at 60:21-25 ("Q. Superintendent Bohn, did you direct the issuance of a criminal trespass warning against Chad Cain for any reason other than you felt he was making a true threat of violence toward an individual or group of individuals? A. No."). Accordingly, the Court concludes that Cain has demonstrated by a preponderance of the evidence that he has a substantial likelihood of showing Defendants were substantially motivated by his Post.

Even looking beyond the face of the criminal trespass warning, Defendants' alternative bases are likewise inconsistent with the First Amendment. To the extent Defendants were motivated by other Facebook posts including the posting of a juvenile's name and image, those posts were also constitutionally protected speech not regulable by the government, as

Superintendent Bohn correctly acknowledged.[18] Insofar as Defendants argue that they were motivated by the fear and complaints of other parents, government retaliation for a crowd's reaction to speech is precisely the sort of majoritarian silencing of disfavored speech against which the First Amendment protects. *Black*, 538 U.S. at 358 (2003) (quoting *Whitney v. California,* 274 U.S. 357, 374 (1927) (Brandeis, J., concurring) ("[T]he First Amendment 'ordinarily' denies a State 'the power to prohibit dissemination of social, economic and political doctrine which a vast majority of its citizens believes to be false and fraught with evil consequence.'")).[19]

Because (a) Cain's Post is substantially likely to be constitutionally protected speech and (b) Defendants were substantially likely to be substantially motivated by the Post to issue the criminal trespass warning, the Court determines that Cain has demonstrated by a preponderance of the evidence a substantial likelihood of success on his claim that the criminal trespass warning violates his free speech rights.

### 2. Threat of Irreparable Harm

Next, in order to obtain a preliminary injunction, Cain must demonstrate he is "likely to suffer irreparable harm in the absence of preliminary relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). "[H]arm is irreparable where there is no adequate remedy at law, such as

---

[18] Superintendent Bohn's Test. 60:6-9 ("But a parent posting a student's name, although I don't like . . . It's not something that I can regulate.").

[19] *Texas v. Johnson*, 491 U.S. 397, 414 (1989) ("If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable"); *Feiner v. New York*, 340 U.S. 315, 320–21 (1951) ("We are well aware that the ordinary murmurings and objections of a hostile audience cannot be allowed to silence a speaker, and are also mindful of the possible danger of giving overzealous police officials complete discretion to break up otherwise lawful public meetings."); *see* Christopher Wolfe, *Originalist Reflections on Constitutional Freedom of Speech*, 72 SMU L. Rev. 535, 541–43 (2019) (discussing whether the Founders intended to leave free speech to the majoritarian will in the democratic process).

monetary damages." *Janvey*, 647 F.3d at 600. An injunction is appropriate only if the anticipated injury is imminent and not speculative. *Winter*, 555 U.S. at 22.

Cain argues that he will suffer irreparable harm if the Court does not enjoin the criminal trespass warning because he will not be able to view his son's football games. According to Cain, not being able to view a son's football game before his military deployment cannot be adequately priced. Mot. for Prelim. Inj. ¶¶ 3-5. Defendants contend that Cain fails to establish irreparable injury, especially given his delay in pursing the injunction. Defs.' Resp. 6-8 (quoting *ADT, LLC v. Capital Connect, Inc.*, 145 F. Supp. 3d 671, 698 (N.D. Tex. 2015)). Cain explains and justifies his delay in seeking injunctive relief on the following grounds: (1) he requested a temporary injunction in the state court that was denied on jurisdictional and immunity grounds (Mot. for Prelim. Inj. ¶ 10); (2) the lawsuit was not removed until May 2020, and the Court issued a discovery stay on June 24, 2020 (Mot. for Prelim. Inj. ¶ 16); and (3) the government's COVID-19 response closed schools beginning in March and the Aledo ISD schools only reopened in late August (Mot. for Prelim. Inj. ¶¶ 14, 15). After considering the record, the Court concludes that Cain has demonstrated good cause on these facts for a delay in seeking the injunctive relief. Further, regardless of how *de minimus* the criminal trespass warning may be following the September 22, 2020, revisions,[20] "[l]oss of First Amendment freedoms, even for minimal periods of time, constitute[s] irreparable injury." *Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274, 280 (5th Cir. 1996) (citing *Elrod v. Burns*, 427 U.S. 347 (1976)). Accordingly, Cain has demonstrated that even with the revisions to the criminal trespass warning, he will suffer irreparable harm without preliminary injunctive relief.

---

[20] *See* Defs.' Resp. App., Ex. A-1 (in an attempt to reach a temporary resolution in advance of the injunction hearing, Defendants offered to allow Cain to attend his son's football games before his deployment with limitations to his ability to arrive early or stay late at the games).

3.   Balance of Hardships and Public Interest

The Court next considers whether the threatened injury to Cain outweighs any damage the proposed injunction may cause Defendants and its impact on the public interest.[21] Defendants contend that an injunction would disserve the public interest by interfering with their broad discretion to control and manage the affairs of the school district. Defs.' Resp. 8 (citing *Daniels v. Morris*, 746 F.2d 217, 277 (5th Cir. 1984)). Defendants' contention is predicated on the assumption that regulating protected speech falls within Defendants' broad discretion. It does not. *See infra* Part III(A)(1). As such, granting the injunction has no possibility of interfering with Defendants' broad discretion to control affairs of the school district. Consequently, Cain has established by a preponderance of the evidence that the threatened injury outweighs any potential harm to Defendants or the public interest. Accordingly, Cain has satisfied these final two factors for issuance of a preliminary injunction.

For the foregoing reasons, the Court finds that Cain has satisfied all prerequisites for a preliminary injunction.

**B.   Bond**

Rule 65(c) provides that "[t]he court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any part found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The amount of security required "is a matter for the discretion of the trial court," and the Fifth Circuit has held district courts have discretion to "require no security at all." *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996) (citing *Corrigan Dispatch Co. v. Casa Guzman*, 569 F.2d

---

[21] The Court considers the balance of hardships and public interest factors together as they overlap considerably. *Texas v. United States*, 809 F.3d 134, 187 (5th Cir. 2015), *aff'd*, 136 S. Ct. 2271 (2016).

300, 303 (5th Cir. 1978)). Neither party has addressed what an appropriate amount would be in this case. The Court finds no evidence that Defendants will suffer any financial loss. Accordingly, the Court directs Cain to pay $250 as security.

### IV.     CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff's Motion for Hearing on Temporary Injunction (ECF No. 41), which the Court has construed as a motion for a preliminary injunction, should be and is hereby **GRANTED**. *See* Fed. R. Civ. P. 65. Defendants are hereby **ENJOINED** from enforcing the criminal trespass warning. Cain must pay $250 as a bond within 14 days of the date of this order.

**SO ORDERED** this **27th day** of **September, 2020.**

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**